Argued September 13, reversed September 21, 1960

## SIMS *v.* DIXON
355 P. 2d 478

*Laurence Morley,* Lebanon, argued the cause for appellant. On the brief were Morley, Thomas & Orona, Lebanon.

*Orval Thompson,* Albany, argued the cause for respondent. On the brief were Weatherford & Thompson, Albany.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and HOWELL, Justices.

HOWELL, J. (Pro Tempore)

This is an action to recover damages arising out of a near collision between the vehicles of plaintiff and defendant in Sweet Home, Oregon. The cause was submitted to a jury and a verdict rendered in favor of plaintiff.

The defendant appeals, assigning error in the denial of his motion for a nonsuit and refusal of the court to give a requested instruction for a directed verdict. The defendant contends that there was no competent evidence of causal relation between defendant's alleged negligence and plaintiff's injuries.

The incident occurred in the morning of December 11, 1957, at the intersection of Main and 18th streets. Main street is a four-lane highway extending east and west through the city. Plaintiff was driving her Oldsmobile in the south lane of Main street, heading east, and defendant was operating an empty log truck and trailer in the left or north lane of Main street, also traveling east. Both vehicles stopped for a red light at the intersection. When the light changed, they both started a right turn to proceed southerly on 18th street. Defendant's truck, according to his testimony, was required to make the right-hand turn from the inside lane because of it length of 48 feet. The defendant, in making his turn, drove his truck around and in front of plaintiff's car, forcing plaintiff to come to a sudden stop to avoid a collision.

What happened thereafter is best described by the following from plaintiff's testimony:

"Well, I stopped, and he went on, and when I

collected my wits I followed him, and this lady with me took the license from his trailer. I honked the horn to get him to stop. He didn't stop. The road was clear, and I flagged him down, and he stopped, and I asked him what was the idea of cutting across in front of me and that I had three people in the car and I asked him if he didn't know it was against the law to cut in front of me. He sat there with a silly grin, and I told him I am going to turn him in, and he said, 'Go ahead,' and I went to the Sweet Home police * * *."

After reporting to the police plaintiff, still excited and angry, went to the mill where defendant's truck was parked, walked about a block through mud and secured the license number of defendant's truck. On her return home plaintiff fainted. For approximately the next two weeks she remained in bed, complaining of acute pains in her lower ribs, throat and arm. She testified that she called the pains "angina spasms."

Plaintiff testified she was "shaking," "freezing" and "covered with perspiration" after the near accident. Witnesses testified plaintiff was upset and angry.

Plaintiff approximately two months before the accident had, as she described, "a mild heart condition" and had been hospitalized for three or four days. In her amended complaint she alleged damage to her heart and an aggravation of a slight heart illness.

Dr. Larson, an osteopathic physician who treated plaintiff at the time of her hospitalization for an "anginal problem" about two months before the incident on December 11, testified that plaintiff was in fairly good health after her release. Dr. Larson did not see plaintiff until three days after the near accident. He stated that she was having a "repeated

anginal problem" at that time, that a year later he hospitalized plaintiff again for the same problem and that she had been receiving some medication 90 percent of the time since December 11, 1957.

With the exception of certain medical testimony, the material portion of which will be referred to later, the foregoing is in substance the evidence on behalf of plaintiff.

Defendant's motion for a nonsuit and his requested instruction for a directed verdict raise the sole question of the sufficiency of the evidence of causal connection between defendant's actions and plaintiff's injuries.

Plaintiff contends that she suffered an angina attack about noon after returning to her home. Dr. Dowling, a physician and surgeon who was called to plaintiff's home after her collapse and who testified as one of two medical witnesses for plaintiff, was not asked for any opinion concerning the probability of the incident causing the attack.

■■ It is well established that the causal connection between defendant's acts or omissions and the plaintiff's injuries must not be left to surmise or conjecture. The proof of the material issue must have the quality of reasonable probability, and a mere possibility that the alleged negligence of the defendant was the proximate cause of plaintiff's injuries is not sufficient. The rule of reasonable probability also applies to expert witnesses. *Frint v. Amato,* 131 Or 631, 284 P 183; *Vale v. State Ind. Acc. Com.,* 160 Or 569, 86 P2d 956; *Simpson v. Hillman,* 163 Or 357, 97 P2d 527; *Henderson v. U.P.R.R. Co.,* 189 Or 145, 219 P2d 170. See also 135 ALR 512; *Eitel v. Times, Inc.* (May 11, 1960), 221 Or 585, 352 P2d 485; and

*Ehler v. Portland Gas & Coke Co.* (June 8, 1960), 223 Or 28, 352 P2d 1102, and cases therein cited.

Dr. Larson, in answer to a hypothetical question concerning the near accident causing her subsequent condition, stated that it was "possible." Later he testified as follows:

"Q I'm asking you to say if you can—Under the hypothetical question, are you able to state what would cause her to become unconscious?
"A *Not being there, absolutely no.*
"* * * * *

"A It's *probable* that if the individual was frightened badly it *could* precipitate extreme emotional stress which could lead to an anginal syndrome." (Emphasis added.)

■ The witness' last answer above amounts to no more than a statement of possibility, and this is insufficient. What caused plaintiff's condition was a medical question, and the medical testimony fails to show with reasonable certainty any connection between the near accident and plaintiff's angina attack. Both the motion for nonsuit and the request for a directed verdict should have been allowed. Reversed.