Argued and submitted March 17, on appeal, reversed and remanded with instructions to enter modified judgment, allocating fault in the following percentages: Rostykus: 35.3 percent; Delgado: 35.3 percent; and Sara Joy Burnson: 29.4 percent; otherwise affirmed, on cross-appeal, affirmed December 15, 2010, petition for review denied May 5, 2011 (350 Or 297)

Katrina D. SON,
as personal representative for
the Estate of Sara Joy Burnson, deceased,
*Plaintiff-Appellant
Cross-Respondent,*

*v.*

ASHLAND COMMUNITY HEALTHCARE SERVICES,
dba Ashland Community Hospital,
*Defendant,*

*and*

Paul ROSTYKUS, MD;
and John Delgado, MD,
*Defendants-Respondents
Cross-Appellants.*

Jackson County Circuit Court
051623L3; A137065

244 P3d 835

Kathryn H. Clarke argued the cause for appellant - cross-respondent. With her on the briefs were Linda K. Eyerman, William A. Gaylord, and Gaylord Eyerman Bradley, P.C.

Lindsey H. Hughes argued the cause for respondent - cross-appellant Paul Rostykus, MD. Janet M. Schroer argued the cause for respondent - cross-appellant John Delgado, MD. With them on the joint briefs were Susan J. Mahoney and Keating Jones & Hughes PC, and Marjorie A. Speirs and Hoffman, Hart & Wagner, LLP.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

This appeal arises out of a jury verdict in a wrongful death case against two physicians. The jury returned a verdict for plaintiff, assigning fault to defendants, decedent, and decedent's father. Plaintiff appeals, asking us to reverse the trial court's judgment to the extent fault is attributed to decedent and decedent's father, and to remand the case to the trial court for the entry of judgment allocating 50 percent fault to each defendant. Defendants cross-appeal, challenging the court's (1) pretrial dismissal of an affirmative defense that decedent was comparatively at fault for consuming the substances that led to her death, and (2) denial of defendants' various motions for relief from judgment and a new trial due to juror misconduct. We agree that the court erred in submitting to the jury the issue of the comparative fault of decedent's father and, accordingly, reverse and remand for entry of a modified judgment.

## I. FACTS

We state the following undisputed facts to provide an overview of the case; however, given the multiple assignments of error and the different standards of review that apply, we have included additional facts elsewhere in the opinion as appropriate. Sixteen-year-old Sara Joy Burnson attended an end-of-the-season party for her softball team, which was intended to be an overnight sleepover at a teammate's house, but surreptitiously became an unsupervised party at a local motel. Her father, David Burns, found out about the unsupervised nature of the party, contacted Sara, and told her to be home by her curfew. When she arrived home after her curfew, Sara and Burns argued briefly. At some point after Burns went to bed, Sara ingested an unknown quantity of pills, including leftover pills prescribed to Burns that he had stored in a box in the garage. The next morning Sara was incoherent, uncoordinated, and vomiting. Burns took her to the emergency room at Ashland Community Hospital at approximately 11:00 a.m. At the time of her arrival, there remained confusion as to both the identification and quantity of the substances that Sara had taken. The hospital records indicate that Sara informed a nurse that she

had consumed some alcohol and cocaine at the party. In addition, Burns's fiancée and Sara's friend gathered loose pills and empty pill bottles from the house and took them to the hospital. One of the empty pill bottles was labeled as Propacet, which is a medication containing acetaminophen and propoxyphene.

Defendant Rostykus was the emergency room physician at the time of Sara's admission. He initially administered Narcan to combat any narcotics in her system and diagnosed Sara with acetaminophen toxicity related to a poly-drug overdose. He suggested that she be admitted to the hospital for n-acetylcysteine treatment for acetaminophen toxicity and continued monitoring for a narcotic overdose. He provided her care until approximately 2:00 p.m. when Sara was transferred to the Intensive Care Unit (ICU) and responsibility for her care shifted to defendant Delgado. Delgado monitored Sara, but her condition quickly deteriorated around 5:00 p.m., and she died shortly thereafter. The Oregon State Medical Examiner and the Jackson County Medical Examiner listed the official cause of death as "sudden cardiac arrhythmia due to propoxyphene overdose."

Plaintiff Katrina Son, Sara's mother and the personal representative of Sara's estate, filed a wrongful death action on behalf of the estate against the hospital and defendants.[1] She alleged that defendants provided negligent treatment to Sara that directly resulted in her death. In particular, plaintiff alleged that defendants were negligent in (1) failing to perform an adequate assessment, (2) failing to make or follow an appropriate treatment plan, and (3) failing to transfer her to another hospital. Defendants raised two comparative fault affirmative defenses in their answers. They alleged that Sara caused or contributed to her death (1) by consuming a variety of substances that eventually led to her death, and (2) by failing to accurately tell her family, the nurses, or defendants what substances she had consumed, including the quantities consumed, and the time that she consumed each.

---

[1] Plaintiff and the hospital settled before trial.

During pretrial depositions, defendants deposed a nurse at Sara's school who indicated that Sara had made a possible suicide gesture two months before her death by taking a number of unidentified pills. Defendants then moved to amend their answers to add an additional affirmative defense of comparative fault, alleging that Burns caused or contributed to Sara's death because he failed to take adequate preventive measures after learning of her prior suicide attempt. In particular, defendants contended that he failed to secure prescription and nonprescription drugs in the home and failed to supervise Sara at the unsanctioned softball party.

Plaintiff attacked defendants' affirmative defenses both before and during the trial. Before trial, plaintiff filed an ORCP 21 motion to strike defendants' affirmative defense that Sara was at fault for consuming the substances that led to her hospitalization. Plaintiff also moved for summary judgment on defendants' "failure to tell" affirmative defense, arguing that because the medical records demonstrated that defendants knew or should have known that Sara had ingested Propacet, no objectively reasonable juror could return a verdict for defendants on that issue. Finally, plaintiff opposed defendants' motions to amend their answers to add the affirmative defense of Burns's comparative fault.

The trial court granted plaintiff's ORCP 21 motion to strike the affirmative defense regarding Sara's consumption of the substances that led to her hospitalization, denied plaintiff's motion for summary judgment on the "failure to tell" defense because it found that there were genuine issues of material fact, and granted defendants' motions to file amended answers.

Plaintiff then filed an ORCP 21 E motion to strike allegations of comparative fault by Burns as insufficient to state a defense as a matter of law. The court denied that motion.

The case eventually proceeded to a three-week jury trial. At trial, plaintiff presented evidence and expert testimony in support of her allegations that defendants failed to meet the standard of care in their diagnosis and treatment of Sara, and that their breach of that standard, to a degree of

reasonable medical probability, caused Sara's death. Defendants defended on the theory, also with supporting expert testimony, that the cause of death was not propoxyphene toxicity and that Sara was appropriately treated for acetaminophen toxicity given the information that they had available and, further, that their treatment plan was also within the standard of care for a propoxyphene overdose.

At the close of evidence, plaintiff moved for a directed verdict on the "failure to tell" affirmative defense, arguing that there was evidence that the substances Sara ingested were identified in the medical records; that there was no evidence that, even if Sara had informed someone of the substances and the amounts that she had ingested, defendants would have treated her differently; and that there was no evidence that, had Sara communicated the details of her ingestion to defendants, it would have made a difference in the ultimate outcome. The court denied the motion.

The jury returned a verdict for plaintiff, assessing fault as follows: Rostykus, 30 percent; Delgado, 30 percent; Sara, 25 percent; Burns, 15 percent. The jury awarded $240,000 in economic damages and $500,000 in noneconomic damages. Accordingly, the court reduced the jury award by the 40 percent attributed to Sara and Burns and entered a general judgment against each defendant for 30 percent of the overall award: $222,000.

After the court entered the general judgment, plaintiff moved for judgment notwithstanding the verdict, requesting that the fault attributed to Sara and Burns be voided and judgment entered against each defendant for one half of the total damages assessed by the jury. The court denied plaintiff's motion. Defendants also filed post-trial motions: a motion for relief from judgment, a motion to interview jurors, and a motion for a new trial—all based on alleged juror misconduct. The court denied those motions. Subsequently, defendants again moved for relief from judgment and for permission to interview jurors. That motion was also denied. Plaintiff appealed, and defendants cross-appealed.

On appeal, plaintiff takes issue with the trial court's decision to allow the jury to consider the alleged comparative fault of Sara and Burns. Defendants, in their cross-appeal, contend that the trial court improperly struck their affirmative defense that Sara was comparatively at fault for consuming the substances that led to her medical condition and ultimately her death. In addition, defendants contend that the court should have granted their motions for relief from judgment and new trial based on juror misconduct.

## II. ANALYSIS

### A. *Failure to Disclose and Comparative Fault*

■ We begin with plaintiff's first assignment of error. Plaintiff contends that the trial court erred by denying plaintiff's motion for a directed verdict on defendants' affirmative defense that Sara negligently failed to inform her family, the nurses, and defendant doctors what substances she had consumed, when she had consumed them, and in what quantities.[2] Defendants claimed that Sara owed a duty to assist in her care by informing defendants of her Propacet ingestion, that she failed to do so, and that failure was a legal cause of her death. On appeal, plaintiff argues that there is no evidence in the record to support defendants' "failure to tell" defense.

■■ "A directed verdict is appropriate only if there is a complete absence of proof on an essential issue or when there is no conflict in the evidence and it is susceptible of only one construction." *Malensky v. Mobay Chemical Corp.*, 104 Or App 165, 170, 799 P2d 683 (1990), *rev den*, 311 Or 187 (1991). When we review the denial of a motion for directed verdict, the evidence, including any inferences, is reviewed in the light most favorable to the party that obtained a favorable verdict, and the verdict cannot be set aside "unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary" to support the verdict. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811

---

[2] Plaintiff does not assign error to the trial court's denial of her motion for summary judgment on the "failure to tell defense," nor does she attack that defense as a matter of law.

(1984). We do not weigh conflicting evidence or evaluate credibility when reviewing the record. *Fang v. Li*, 203 Or App 481, 485, 125 P3d 832 (2005).

Accordingly, we look to the record in this case to determine whether there is any evidence to support the jury's assignment of comparative fault to Sara for her "failure to tell." On appeal, plaintiff argues that there is no evidence that Sara's "failure to tell" caused or contributed to her death. First, plaintiff focuses on trial testimony that overdose patients are not reliable reporters of what and how much they have consumed. Further, she points to specific evidence that Sara was initially incoherent when she was admitted and "lethargic and obtunded" after she was transferred to the ICU.

Plaintiff also argues that, in terms of causation, defendants failed to produce evidence that Sara's "failure to tell" would have made a difference in defendants' treatment of her or the ultimate outcome. That is, according to plaintiff, defendants had to introduce evidence that, if Sara had given them better information about what she had ingested, defendants would have treated her differently and she would not have died. Plaintiff states that the record lacks any evidence that defendants would have done anything differently if they were informed as to Sara's Propacet ingestion, and, thus, there is no evidence for the jury to rely on to conclude that her failure to inform was a legal cause of her death. Further, plaintiff argues that, under *Joshi v. Providence Health System*, 342 Or 152, 159, 149 P3d 1164 (2006), defendants were required to produce expert testimony that Sara's failure to tell "more likely than not" brought about her death because the issue of causation involves a complex medical question.

In their response brief, defendants confirm that their affirmative defense was focused on Sara's failure to tell anyone about the details of her Propacet ingestion. Defendants argue that there is no evidence that Sara told anyone that she ingested Propacet. They contend that there is evidence that Sara could have, but did not, tell anyone that she ingested Propacet, and they point to evidence that Sara had previously attempted suicide, which they maintain supports

the inference that she intentionally withheld information about her Propacet ingestion.

As to causation, defendants counter that there was evidence of causation on the issue of Sara's negligence, so it was appropriate to submit it to the jury. They frame their argument in the context of the information they were presented with on Sara's admission to the hospital—a poly-drug overdose. Accordingly, they point to evidence that the medical history that they were provided at Sara's admission was confusing and inconsistent, as well as expert testimony that Sara's symptoms were not typical of a Propacet overdose, and that they did not have the ability to test for propoxyphene at the hospital. Defendants contend that the evidence described above demonstrates that Propacet was "not the obvious culprit" of Sara's condition, so a jury could infer from the trial evidence that, had Sara informed defendants of the details of her Propacet ingestion, defendants would have focused on Propacet and given her the appropriate treatment. Defendants recognize that, at trial, their defense rested in part on the theory that defendants properly treated Sara for a Propacet overdose. But they point to testimony by plaintiff's expert witnesses that treatment with sodium bicarbonate would have saved Sara's life as evidence that Sara's failure to inform them contributed to her death.

From our review of the record in the light most favorable to defendants, and without weighing conflicting evidence or credibility, we conclude that the trial court did not err in denying plaintiff's motion for directed verdict on the "failure to tell" affirmative defense. Although the record contains conflicting evidence as to how much defendants knew about Sara's Propacet ingestion and how they learned that information, there is evidence that Sara did not tell defendants any information regarding her Propacet ingestion. And although plaintiff points to evidence in the record that Propacet was identified early on in the admission process and that that information may have come from Sara, that is not our focus under the standard of review. The question is not whether there is evidence that someone told defendants about her Propacet ingestion, but whether there is any evidence that Sara did not. On this record, it can be inferred that she did not communicate any detail of her Propacet ingestion to defendants and that she was capable of doing so.

Further, defendant Rostykus testified that he did not know that Propacet was "on board," and had he known, he would have investigated further and treated her differently. There is also evidence about the uncertainty of the medical staff as to the substances and quantities taken from which the jury could infer that had defendants known more specifics of her ingestion, it would have made a difference in their treatment; and there is testimony that, had they known that she had ingested Propacet, a simple call to the Oregon Poison Center would have led to appropriate treatment information. Further, there is evidence in the record, albeit introduced by plaintiff's experts, that treatment with sodium bicarbonate would have saved Sara's life; nothing prevents defendants from relying on such evidence to defeat a motion for directed verdict.

Accordingly, there is evidence in the record that Sara failed to inform defendants of her Propacet ingestion, that she could have done so, and that, had she done so, defendants may have focused on Propacet as the cause of her condition, administered the appropriate treatment for propoxyphene toxicity, and saved her life. Although that may not be the only inference, it is one, and that is all that is required under our standard of review. We therefore affirm the trial court's denial of plaintiff's motion for directed verdict.

## B. *Pretreatment Conduct and Comparative Fault*

Next, we consider the affirmative defenses that raised the comparative fault of Sara and Burns for conduct that preceded Sara's admission to the hospital. Initially, we consider whether conduct by a patient that created the condition that required medical care in a medical malpractice action can constitute an affirmative defense. Because we conclude that it cannot, we then consider whether such a rule also applies to a statutory beneficiary's conduct that contributed to the decedent's condition for which treatment was sought.

Before we discuss the specific assignments of error, we provide a brief statement of negligence law in Oregon because it drives our analysis in this case. In Oregon, under what is commonly referred to as the *Fazzolari* trilogy, a common-law negligence claim requires the plaintiff to demonstrate

"(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent."

*Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), and *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970)). Under *Fazzolari*, the Supreme Court has abandoned the traditional notion of "proximate cause," as well as the concept of common-law duty in the absence of a special relationship. *Fazzolari*, 303 Or at 17.

However, because a claim for professional negligence involves a special relationship between the plaintiff and the defendant, a different standard applies: Professional negligence is "the failure to meet the standard of care used in the reasonable practice of the profession in the community." *Delaney v. Clifton*, 180 Or App 119, 123, 41 P3d 1099 (2002). The plaintiff must plead and prove "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) a causal link between the breach and the harm. *Moser v. Mark*, 223 Or App 52, 55-56, 195 P3d 424 (2008) (citing *Zehr v. Haugen*, 318 Or 647, 653-54, 871 P2d 1006 (1994)). When a physician-patient relationship exists, the doctor has a duty to exercise "that degree of care, knowledge and skill ordinarily possessed and exercised by the average provider of that type of medical service." *Curtis v. MRI Imaging Services II*, 327 Or 9, 14, 956 P2d 960 (1998).

Allegations of comparative fault introduce an additional twist to Oregon's negligence law. In general terms, the comparative fault statute allows the contributory negligence of the plaintiff to be compared with the tortfeasor and can be used to reduce the damages awarded to the plaintiff.

ORS 31.600(2).[3] However, the statute does not obviate the application of general common-law negligence principles when pleading and proving an affirmative defense of contributory negligence. *Dahl v. BMW*, 304 Or 558, 563, 748 P2d 77 (1987). That is, general common-law negligence principles apply, only they must be considered in the context of the plaintiff's conduct and the harm that befell the plaintiff. The *Fazzolari* standard, as applied in comparative fault cases, has been stated as whether the facts of the case indicate that the plaintiff "took some action or failed to take some action which a reasonable person could have foreseen would increase the risk of harm to the plaintiff, and that the plaintiff did indeed suffer harm of the type which could have been foreseen * * *." *Id*. However, Oregon's appellate courts have not yet had the occasion to apply this statement of the law in medical malpractice cases.

■ With those standards in mind, we move to the specific assignments of error. We begin with defendants' first assignment of error on cross-appeal because its resolution lends to our analysis of, and ultimately resolves, plaintiff's second through fourth assignments of error. Defendants' first assignment of error contends that the trial court erred by granting plaintiff's motion to strike defendants' affirmative defense of comparative fault by consumption. That is, that

---

[3] ORS 31.600 provides, in part:

"(1) Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the claimant was not greater than the combined fault of all persons specified in subsection (2) of this section, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant. This section is not intended to create or abolish any defense.

"(2) The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection. Except for persons who have settled with the claimant, there shall be no comparison of fault with any person:

"(a) Who is immune from liability to the claimant;

"(b) Who is not subject to the jurisdiction of the court; or

"(c) Who is not subject to action because the claim is barred by a statute of limitation or statute of ultimate repose."

Sara's consumption of the substances that led to her overdose should have been considered in the allocation of fault by the jury. Defendants argue that their consumption affirmative defense was supported by allegations and evidence that Sara's death was the "inevitable result of her lethal drug ingestion and, if defendants were negligent in failing to save her, then Sara's actions combined with their negligence to cause her death."

■ When reviewing a trial court's grant of a motion to strike for failure to state a defense, we assume the truth of the facts alleged and give the nonmoving party the benefit of all favorable inferences that may be drawn from the facts alleged. *Doyle v. Oregon Bank*, 94 Or App 230, 232, 764 P2d 1379 (1988), *rev den*, 307 Or 571 (1989).

Defendants argue that existing Oregon law allows a jury to consider a patient's negligent conduct that leads to the need for medical treatment. In support, defendants cite *Wemett v. Mount*, 134 Or 305, 292 P 93 (1930), and *Beadle v. Paine*, 46 Or 424, 80 P 903 (1905), for the proposition that Oregon's courts recognize the defense of a patient's comparative fault in medical malpractice claims.

Plaintiff contends that the resolution of this issue turns on the injury or harm complained of in a medical malpractice action. Plaintiff cites a number of cases from other jurisdictions that have rejected comparative fault defenses in similar circumstances, and she concludes that Sara's consumption of the substances that led to her hospitalization is not the type of conduct that supports a comparative fault affirmative defense.

■ We agree with plaintiff that the type of conduct alleged by defendants does not support a comparative fault defense. A medical malpractice claim requires proof that the negligent medical care caused an injury that nonnegligent care would have avoided. *Simpson v. Sisters of Charity of Providence*, 284 Or 547, 561, 588 P2d 4 (1978); *Horn v. National Hospital Association*, 169 Or 654, 679, 131 P2d 455 (1942). In wrongful death actions based on medical malpractice, the plaintiff must demonstrate that "the defendant's negligent act or omission more likely than not brought about the death of the decedent." *Joshi*, 342 Or at 159. In sum, the

focus in a medical malpractice case is on the injury caused by the negligent treatment, not the original injury that created the need for treatment.

Although we have never directly addressed this issue in the medical malpractice context, we have recognized that professional malpractice is a form of negligence, and, in the negligence context, "findings of comparative fault can be based on the plaintiff's failure to take reasonable measures which might have prevented or reduced the injury *caused* by the defendant's negligence." *Becker v. Port Dock Four, Inc.*, 90 Or App 384, 390, 752 P2d 1235 (1988) (emphasis added). In medical malpractice cases, the focus is therefore on the injury caused by the malpractice (*i.e.*, the harm caused by the doctor's failure to meet the standard of care used in the reasonable practice of the profession in the community), not the original injury that necessitated treatment.

■ It follows, then, that a valid defense of comparative fault in medical malpractice cases requires that the plaintiff's negligent conduct relate and contribute to the negligent treatment, because it is the negligent treatment that causes the injury that is at issue. Stated another way, the patient's negligence must have been an element in the transaction on which the malpractice is based. *See* Richard M. Patterson, *Harney's Medical Malpractice* § 4.12 (4th ed 1999). This concept is further elucidated by the limitation of damages in medical malpractice cases to those damages attributable to the injury that resulted from the negligent care, rather than the injury that necessitated the treatment. For example, a plaintiff who negligently breaks his arm and receives negligent treatment from a doctor that necessitates amputation of that arm, can recover only damages attributable to the amputation, but cannot recover for any damages related to the broken arm. In sum, given that the focus in medical malpractice claims is on the negligent acts or omissions of the medical provider, it is inappropriate to use the patient's negligence that led to the condition that required medical attention to excuse the defendants' failure to meet the accepted standard of care. A patient who negligently injures himself is nevertheless entitled to subsequent nonnegligent medical treatment, and, if it is not provided, the patient is entitled to recover damages for the consequences of that negligence.

We emphasize that our decision still gives credence to the general negligence standard that must be applied in these cases: Whether the facts of the case indicate that the plaintiff "took some action or failed to take some action which a reasonable person could have foreseen would increase the risk of harm to the plaintiff, and that the plaintiff did indeed suffer harm of the type which could have been foreseen * * *." *Dahl*, 304 Or at 563. Rather, our conclusion is that the plaintiff's action must relate to the negligent treatment because, as a matter of law, conduct that merely creates the need for medical treatment cannot cause the type of harm at issue in medical malpractice cases—the injury resulting from the malpractice.

Our conclusion is in line with the majority of other jurisdictions that have dealt with this issue. Although those jurisdictions sometimes differ in the reasoning used to resolve the issue, they often rest on the proposition that "a physician simply may not avoid liability for negligent treatment by asserting that the patient's injuries were originally caused by the patient's own negligence." *Fritts v. McKinne*, 934 P2d 371, 374 (Okla Civ App 1996). Further, the majority rule most often cited states that,

> "to be considered as and constitute contributory negligence in a medical malpractice action, a patient's negligence must have been an active and efficient contributing cause of the injury, must have cooperated with the negligence of the malpractitioner, must have entered into proximate causation of the injury, and must have been an element in the transaction on which the malpractice is based. Accordingly, * * * the defense * * * is inapplicable when a patient's conduct provides the occasion for medical attention, care, or treatment which later is the subject of a medical malpractice claim or when the patient's conduct contributes to an illness or condition for which the patient seeks the medical attention, care, or treatment on which a subsequent medical malpractice claim is based."

*Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb 1, 15, 459 NW2d 178, 186-87 (1990).

Our decision does not preclude a comparative fault defense to all instances of negligent conduct by patients. Various jurisdictions have found that a patient's conduct can

form a defense of contributory negligence when the patient has "(1) failed to follow a medical instruction, (2) refused or neglected prescribed treatment, or (3) intentionally given erroneous, incomplete, or misleading information which is the basis for medical care or treatment of the patient[.]" *Id.* *See, e.g., Musachia v. Rosman*, 190 So 2d 47, 50 (Fla Dist Ct App 1966) (concluding that a contributory negligence defense was available when a patient died from an injury attributed to perforations in his small intestine when the patient left the hospital against his doctor's advice and without being discharged and then proceeded to drink alcohol that may have contributed to the perforations); *see also Rochester v. Katalan*, 320 A2d 704, 708 (Del 1974) (determining that contributory negligence defense was appropriate where the decedent furnished incorrect information and faked symptoms to his medical provider that resulted in his provider administering a fatal dosage of methadone). Those cases involve patient conduct that occurred concurrently with the provision of medical services.

Moreover, the Supreme Court cases cited by defendants are not contrary to our conclusion. *Wemett* and *Beadle* acknowledge the existence of a contributory negligence defense in medical malpractice cases, but neither case is controlling here. Neither case appears to deal with the type of conduct at issue in this case—conduct by the patient that created the condition that the defendant doctors allegedly treated negligently.

In *Beadle*, the plaintiff sought damages for alleged negligent treatment of his injured arm. At trial, the court instructed the jury on contributory negligence as it related to the plaintiff observing directions given after the initial treatment by the defendant doctors—the implication being that the doctors alleged that the plaintiff's conduct after the treatment led to the injury for which the plaintiff sought damages. *Beadle*, 46 Or at 431-32. The court concluded that such instructions were appropriate because,

"if he refused or failed to follow [the instructions], he could not complain if his negligence in that respect conduced to the injury. That is to say, if it prevented or retarded union or healing of the parts, for the directions were a part of the

treatment prescribed, and a want of observance of them on the patient's part would defeat the action."

*Id.* Accordingly, the conduct at issue in *Beadle* occurred after the defendant doctors treated the plaintiff, and the court was not faced with the issue in the instant case.

The Supreme Court's decision in *Wemett* involved similar circumstances. In that case, the plaintiff filed a medical malpractice action when she was burned by a diathermy machine at the defendants' medical office. The defendants alleged that the plaintiff failed to obey their instructions and was therefore guilty of contributory negligence. *Wemett*, 134 Or at 309. The Supreme Court stated the general rule that,

"with regard to contributory negligence on the right to recover for personal injuries alleged to have arisen from negligence or malpractice of physicians and surgeons, appl[ies] the same as in ordinary actions for injuries, it is uniformly held that where negligence on the part of the patient or those acting for him proximately conduced or contributed to the injury complained of, there can be no recovery because of negligence on the part of a patient, and it is not a bar to recovery where it did not contribute proximately to the injury."

*Id.* at 316. It appears, again, that the defendant doctors alleged a failure to follow instructions at the time of treatment, but did not attempt to assign any negligence to the plaintiff for any conduct that preceded the treatment. Although the court in *Wemett* states the rule in terms of proximate causation, it supports our conclusion that the negligence on the part of the patient must contribute to the injury caused by the malpractice, not the original injury necessitating medical treatment.

We conclude that the trial court did not err by striking defendants' affirmative defense related to Sara's consumption of the substances that led to her hospitalization.

C. *Statutory Beneficiary and Comparative Fault*

Next, we examine plaintiff's assignments of error regarding Burns's comparative fault. Ultimately, we resolve this issue on the principles already discussed. That is, for the

reasons discussed above, the conduct of a statutory beneficiary that contributed to the medical condition for which a patient required treatment does not cause the type of harm that is at issue in medical malpractice cases.

Plaintiff contends that the court erred by granting defendants' motions to amend their answer to allege Burns's comparative fault; denying plaintiff's ORCP 21 C motion to strike allegations of comparative fault against Burns; and denying plaintiff's motion for a directed verdict on the ground that Burns's pretreatment conduct is not a defense. Plaintiff's assignments of error raise two questions of law: first, whether Oregon's comparative fault statute allows an allocation of fault to a statutory beneficiary in a wrongful death action; and second, under the wrongful death and comparative fault statutes, whether a statutory beneficiary's conduct that contributes to a child's condition that requires medical care can be a defense to a medical malpractice claim. Because the second through fourth assignments of error raise the same legal issues, we discuss them together. In doing so, we briefly address the parties' arguments on the first question to frame our discussion of the second question, which we find dispositive to this issue.

By its explicit terms, the comparative fault statute, ORS 31.600(2), allows the trier of fact to compare the fault of four groups: (1) the claimant, (2) any party against whom recovery is sought, (3) third-party defendants liable to the claimant, and (4) any person with whom the claimant has settled. ORS 30.020, Oregon's wrongful death statute, provides, in part:

"(1) When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, * * * may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission."

Plaintiff contends that ORS 31.600 precludes consideration of Burns's alleged negligence as a matter of law because he does not fit within any of the categories explicitly listed in ORS 31.600(2). Defendants, citing our decision in *Robinson v. CSD*, 140 Or App 429, 914 P2d 1123 (1996), counter that, because Burns is a statutory beneficiary under ORS 30.020, his alleged fault can be considered as a "claimant" under ORS 31.600(2). That is, defendants contend, in a wrongful death action the comparative fault statute allows the factfinder to consider the comparative fault of both the decedent and any statutory beneficiaries, and to diminish any damages accordingly.

The trial court, although having struck the affirmative defense regarding Sara's pretreatment consumption, apparently concluded that *Robinson* required that the allegations of comparative fault against Burns go to the jury.

*Robinson* involved a wrongful death action by the decedent's mother, as the personal representative of the decedent's estate, against the Children's Services Division (CSD) and the operator of a private treatment facility for the decedent's suicide at the private facility. The decedent's mother sued, alleging that CSD had negligently placed the decedent under the care of the private company and that the private company negligently failed to properly supervise the decedent. *Robinson*, 140 Or App at 431. The defendants asserted affirmative defenses that the decedent contributed to his own death and that his mother and stepfather contributed to his death by, among other things, physically and verbally abusing him. *Id.* The decedent's mother moved to strike the defenses, arguing that she brought the suit in her capacity as a personal representative, not as a beneficiary under the wrongful death statute. According to the decedent's mother, Oregon's comparative fault statute at that time, ORS 18.470,[4] allowed a "factfinder to compare defendants'

---

[4] At the time of trial in *Robinson*, ORS 18.470 (1993) provided:

"Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

fault only against the fault of the person seeking recovery." *Id.* at 431. She reasoned that, because she was seeking recovery as the decedent's personal representative, her alleged fault and that of the stepfather in their capacity as beneficiaries could not be compared with the fault of the defendants. That is, the personal representative is the "person seeking recovery," not the beneficiary.

In *Robinson*, we analyzed the relationship between the wrongful death statute and the then-existing comparative fault statute and concluded that the designated beneficiaries under the wrongful death statute are "persons seeking recovery," and thus the beneficiaries' contributory negligence could be asserted as a defense in the wrongful death action. *Id.* at 438. As a result, we concluded that, because the decedent's mother and stepfather were beneficiaries under ORS 30.020(1), the defense was appropriate.

In this case, defendants acknowledge that the legislature amended the comparative fault statute in 1995, and, among the changes, the legislature substituted the phrase "claimant" for "person seeking recovery." *Compare* ORS 31.600(2) *with* ORS 18.470 (1993). Nevertheless, defendants contend that the legislature's change does not alter the outcome in *Robinson*, but instead was in response to the Supreme Court's decision in *Davis v. O'Brien*, 320 Or 729, 891 P2d 1307 (1995), in which the court held that a factfinder could not consider the comparative fault of a settling party.

Even if we assume that *Robinson* applies in this instance, it does not completely resolve the issue before us. That is so because the instant case is premised on the injury arising from defendants' alleged medical malpractice, not the condition necessitating treatment; as stated above, it is inappropriate in such cases to consider any alleged negligent conduct by a statutory beneficiary that created the condition that defendants were charged with remedying. Accordingly, we do not need to decide the issue that was presented in *Robinson*.

The parties' arguments on this issue track the arguments already discussed above. Plaintiff contends that the same rule should extend to any pretreatment conduct of a

parent and suggests that such a rule of law would bar defendants' affirmative defense of Burns's comparative fault. Plaintiff continues that any negligent conduct attributed to Burns, such as his failure to supervise Sara or his failure to remove pills from his house, only contributed to the condition for which Sara sought treatment.

Defendants rely on *Robinson*, the comparative fault statute, and *Beadle* and *Wemett*. They also argue that, from a policy standpoint, allowing the factfinder to assess the negligence of a parent makes sense in this type of situation because an otherwise at-fault parent could potentially profit from his or her own negligence in failing to protect or supervise the child. Defendants dispute that a different rule should apply in medical malpractice cases, claiming that accepting plaintiff's theory would allow full recovery on the parent's behalf regardless of the reprehensibility of his conduct and direct role in a child's death.

We agree with plaintiff that, as a matter of law, defendants' affirmative defense alleging Burns's comparative negligence is improper. *Robinson* did not involve a wrongful death action based on medical malpractice, and, as previously discussed, in such cases, the focus is on the medical treatment given and the harm is the injury resulting from the negligent treatment.

Accordingly, Burns's conduct contributed to Sara's need for medical treatment, but was not an element in the transaction on which the malpractice claim was based. We see no good reason that the same rule should not apply to a statutory beneficiary when the conduct simply creates a medical condition that needs treatment. Otherwise, under *Robinson*, the jury could consider Burns's conduct as if he were a "claimant" under ORS 31.600(2), but he could not benefit from the rule announced above. We conclude that the same rule applies to statutory beneficiaries, and the trial court erred by allowing the affirmative defense alleging Burns's comparative fault.

D. *Remedy for Error*

Because we have determined that the court should not have allowed the jury to consider Burns's fault, we must

decide on the appropriate remedy for that error. Plaintiff urges us to reallocate the 15 percent of fault attributed to Burns to the defendants equally. In support, they point to the provision in ORS 31.610(3) that provides for the reallocation of damages that are determined as "uncollectible" from any defendant that is severally liable. That statute reallocates the uncollectible share to the other parties "on the basis of each party's respective percentage of fault determined by the trier of fact[.]" ORS 31.610(3). Plaintiff states that such an approach is consistent with the view taken in the *Restatement (Third) of Torts: Apportionment of Liability*, § 7 comment h (1999). Plaintiff also characterizes her requested adjustment as "a simple mathematical exercise" and cites Supreme Court decisions where the court ordered that judgments be adjusted when the adjustment simply involved mathematical calculations. *See Palmore v. Kirkman Laboratories*, 270 Or 294, 308, 527 P2d 391 (1974); *Clements v. Thornton*, 268 Or 367, 377, 520 P2d 893 (1974); *In re McKinney's Estate*, 175 Or 28, 38, 149 P2d 980, 151 P2d 459 (1944).

Finally, plaintiff cites the discussion in *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 606-07, 642 P2d 624 (1982), regarding how the factfinder assesses and quantifies fault under the comparative fault statute. To briefly summarize, the court in *Sandford* concluded that a plaintiff's behavior must be measured against the "faultless norm," otherwise stated as "behavior that would have been faultless under the circumstances." *Id.* at 607. The factfinder determines the degree to which the behavior fell below the norm and must express it as a numerical percentage. *Id.* Similarly, the defendant's conduct must be assessed as a percentage of the deviation from the norm that applies to the defendant. The court in *Sandford* explained that this initial step is necessary to determine if the fault of the plaintiff or the defendant is greater, because if the plaintiff's fault is greater, then recovery is barred. *Id.* at 610; *see* ORS 31.600. Nevertheless, at this point, the percentages are in relation to the faultless norm and do not represent a comparison of fault between the parties. Therefore, the percentages do not need to add up to 100 percent. *Id.* at 610 n 19. Once the initial determination is made, the factfinder must convert the "respective degrees of fault" into a percentage that will be applied to the plaintiff's

total damages to determine the total recovery. *Id.* As we understand plaintiff's argument, the statute requires the factfinder to determine how much each party was at fault as against the faultless norm, rather than assessing fault by comparing each party's fault against each other. Because of that distinction, plaintiff argues that the percentages assigned by the factfinder to each party are simply calculations necessary to total 100 percent. Accordingly, if a party is removed from the equation on appeal, any percentage of fault assigned to that party can be reallocated by the court because the percentages represent each party's fault against the faultless norm. So in this case, the 15 percent attributed to Burns by the jury would be reallocated in proportion to the fault assigned to the other parties without invading the jury's role as trier of fact.

Defendants contend that the remedy for any error is a new trial because the comparison of fault is a matter for the trier of fact to weigh in its apportionment of responsibility for the plaintiff's injuries and that reallocating the fault of Burns is not a simple mathematical exercise. Defendants distinguish the decisions relied on by plaintiff, arguing that those cases involved simply deducting a discrete setoff, rather than imposing a different responsibility for each of defendants. Defendants reason that the jury made a factual determination that each defendant was only 30 percent at fault and that there is no principled way to determine how the fault attributed to Burns should be reallocated without resubmitting the case to a jury for a new trial.

Defendants also rely on the jury trial provisions of Article VII (Amended) section 3, of the Oregon Constitution, and counter that the *Restatement* lists reallocation by the court as one remedy, but also recognizes that the "interests of justice may sometimes require a new trial," and a key factor in that analysis is "whether eliminating the nonliable person from the factfinder's consideration might have substantially altered the jury deliberations." *Restatement* § 7 comment h.

We conclude that, having determined that the jury should not have considered Burns's fault, we can reallocate the 15 percent fault attributed to him among the remaining parties without invading the jury's mandated function as the

trier of fact. Although ORS 31.605(1)(b) assigns to the trier of fact the task of determining the "degree of fault of each person specified in ORS 31.600(2)[,]" and provides that "[t]he degree of each person's fault * * * shall be expressed as a percentage of the total fault attributable to all persons considered by the trier of fact pursuant to ORS 31.600," judicial efficiency and the allocation of fault against the "faultless norm" convinces us that reallocation without a new trial is proper.

Further, it is important to note that, when the jury was charged with allocating fault into comparative percentages for the verdict, it was faced with conduct from two distinct time periods: first, Burns's conduct, which occurred before Sara's hospital admission and then the conduct of Sara, Rostykus, and Delgado, all of which occurred at the time of Sara's treatment. As a result of our decision, Burns's conduct is removed from consideration because it preceded the harm complained of. It follows that, because we are left with conduct only by the three parties that occurred at the same time and during the treatment on which the malpractice is based, it is logical that the jury's percentages reflect a ratio of fault attributed among those parties as to the conduct that occurred during that time frame. That is, without Burns's conduct, we are faced with the jury's conclusions as to the ratio of fault of those that participated in the events that transpired in the injury that resulted from negligent care. Therefore, it is appropriate to redistribute the 15 percent attributed to Burns in the same ratio to Sara, Rostykus, and Delgado.

In addition, the factors identified by the *Restatement* weigh in favor of our decision. According to the *Restatement* § 7, the

> "factors relevant to whether a new trial is required include: (1) whether eliminating the nonliable person from the factfinder's consideration might have substantially altered the jury deliberations, such as when the nonliable person was assigned the vast majority of responsibility and the remaining persons only very small percentage; (2) whether reallocation would put a party on the other side of a discontinuity in the jurisdiction's joint-and-several-liabilty rules * * * or modified-comparative-responsibility rule * * *; and

(3) whether the jurisdiction permits argument and instruction to the jury about those discontinuities."

Accordingly,

"[w]hen the plaintiff is not assigned any comparative responsibility, when there are no discontinuities in the comparative-responsibility system * * *, and when there is not a large disparity in the percentages assigned to the parties, it is desirable to have the court reallocate the share of responsibility assigned to the nonliable party."

*Restatement* § 7 comment h. The *Restatement* explains that, because the factfinder assigns "comparative responsibility," it is "reasonable to assume that it entails a determination of the relative responsibility of the parties." *Id.*

In this case, Burns was allocated only 15 percent of the comparative fault, there is not a large disparity among the percentages assigned to the parties, and reallocation will not put a party on the other side of discontinuity. Accordingly, based on the fault percentages assigned by the jury, we reallocate the fault as follows: Rostykus: 35.3 percent; Delgado: 35.3 percent; and Sara: 29.4 percent.[5]

E. *Juror Misconduct*

■ Finally, we address defendants' remaining assignments of error to the trial court's denial of their motions to interview the jurors and conduct a new trial on the basis of juror misconduct. We conclude that the trial court did not abuse its discretion by denying those motions.

Defendants received information that one of the jurors expressed a negative opinion about Rostykus to an alternate juror after the trial. The substance of the alleged juror misconduct is that a juror did not initially recognize Rostykus, but eventually recognized him as a doctor who had provided emergency medical care to her grandson. The juror allegedly stated that Rostykus did not seem concerned with her grandson's situation and that she did not like him and harbored a negative opinion of him.

---

[5] The reallocation is calculated as the percentage assigned to each remaining party by the jury divided by 85 percent (100 − 15).

■ Oregon has a strong policy to protect jury verdicts from attack. *State v. Jones*, 126 Or App 224, 227, 868 P2d 18, *rev den*, 318 Or 583 (1994). A new trial is justified by limited kinds of juror misconduct—misconduct that is "extrinsic to the communications between jurors during the deliberative process or that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to contempt of court or criminal prosecution." *Id.* (footnote omitted). Further, courts are "hesitant to allow interrogation of jurors in order to probe for potential misconduct after they have reached a verdict." *Id.* at 228. The misconduct alleged here does not rise to the level necessary to overcome the substantial burden that is required under Oregon law.

On appeal, reversed and remanded with instructions to enter modified judgment, allocating fault in the following percentages: Rostykus: 35.3 percent; Delgado: 35.3 percent; and Sara Joy Burnson: 29.4 percent; otherwise affirmed. On cross-appeal, affirmed.