Argued and submitted December 4, 2014, affirmed April 8, petition for review allowed September 10, 2015 (357 Or 743)

Joseph L. SMITH,
*Plaintiff-Appellant,*

*v.*

PROVIDENCE HEALTH & SERVICES - OREGON,
dba Providence Hood River Memorial Hospital,
dba Providence Medical Group;
Linda L. Desitter, MD;
Michael R. Harris, MD;
Hood River Emergency Physicians, LLC; and
Hood River Medical Group, PC;
*Defendants-Respondents,*

*and*

PROVIDENCE MEDICAL GROUP,
fka Hood River Medical Group, PC; and
Hood River Medical Group, PC,
*Defendants.*

Multnomah County Circuit Court
130202067; A155336

347 P3d 820

Stephen C. Hendricks argued the cause for appellant. With him on the briefs were Joseph L. Smith and Hendricks Law Firm, P.C.

George Pitcher argued the cause for respondent Providence Health & Services-Oregon. On the joint brief were Lindsey H. Hughes, Hillary Taylor, and Keating Jones Hughes, P.C.; George Pitcher and Williams Kastner; Jay Beattie and Lindsay Hart LLP.

Jay Beattie argued the cause for respondents Linda L. Desitter, MD, and Hood River Emergency Physicians. On the joint brief were Lindsey H. Hughes, Hillary Taylor, and Keating Jones Hughes, P.C.; George Pitcher and Williams Kastner; Jay Beattie and Lindsay Hart LLP.

Hillary A. Taylor argued the cause for respondents Michael R. Harris, MD, and Hood River Medical Group, P.C. On the joint brief were Lindsey H. Hughes, Hillary Taylor, and Keating Jones Hughes, P.C.; George Pitcher and Williams Kastner; Jay Beattie and Lindsay Hart LLP.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

This case was filed after plaintiff suffered a stroke and permanent brain damage. He sought relief from defendants, Providence Hood River Memorial Hospital, Linda Desitter, M.D., Michael Harris, M.D., and Hood River Emergency Physicians, alleging medical negligence based upon a "loss of chance" theory of recovery. Defendants moved to dismiss on the ground that plaintiff had failed to state a claim, because "loss of chance" is not a cognizable claim in Oregon. ORCP 21 A(8). The trial court granted the motion. Plaintiff appeals and seeks reversal of the judgment dismissing his complaint. "In reviewing a ruling allowing a motion to dismiss for failure to state a claim, an appellate court assumes that all well-pleaded facts are true and gives the party opposing the motion the benefit of all reasonable inferences that may be drawn from those facts." *Lowe v. Philip Morris USA, Inc.*, 344 Or 403, 407 n 1, 183 P3d 181 (2008). We affirm.

We take the facts from plaintiff's second amended complaint. Plaintiff, a 49-year-old man, arrived at the Providence Hood River Memorial Hospital ("Providence") on April 8, within two hours of the onset of early symptoms that he believed might indicate a stroke. A CT scan did not show bleeding in plaintiff's brain. Plaintiff's attending emergency room physician, Desitter, did not diagnose plaintiff with a stroke or instruct plaintiff to take aspirin. She concluded that his symptoms "were caused by taking a sleep aid hours before the onset of symptoms, told him he needed to have his eyes examined," and discharged him. The following night, plaintiff returned to Providence with increased head pain and visual problems. Desitter was the attending physician again assigned to plaintiff. She diagnosed him with a headache and gave him a prescription for Vicodin, but she did not advise him to take aspirin and did not order an MRI.

On April 11, plaintiff attended a follow-up appointment with another physician, Harris. Plaintiff did not report any additional symptoms at that time. Harris ordered an MRI for April 15, but he did not advise plaintiff to take aspirin. At some time, plaintiff's condition worsened. When the MRI was ultimately performed, it revealed "substantial

brain damage from a stroke." Plaintiff exhibited signs of stroke, including "significantly slurred speech, [and] significant cognitive impairments[.]" He continues to suffer permanent damage.

Plaintiff's complaint sought relief for "injuries * * * caused or substantially contributed to by the negligence of defendants * * *." As to Providence and Desitter, he alleged negligence:

"a.  In failing to take a full and complete history from both [plaintiff] and other people who knew his condition;

"b.  In failing to perform a thorough physical and neurological examination;

"c.  In failing to order an MRI;

"d.  In failing to request a neurological consult; or

"e.  In failing to start the patient on aspirin."

As to Providence and Harris, plaintiff alleged negligence as follows:

"a.  In failing to order the MRI stat; or

"b.  In failing to start the patient on aspirin[.]"[1]

Plaintiff stated that as a result of that conduct, "on a more probable than not basis, [plaintiff] lost a chance for treatment which, 33 percent of the time, provides a much better outcome, with reduced or no stroke symptoms."

Defendants moved to dismiss for failure to state a claim. ORCP 21 A(8). Defendants argued that plaintiff's action relied on a "loss of chance" theory that has been rejected in Oregon.[2] They contended that the harm plaintiff suffered was a result of his stroke, that there was no causal link between their conduct and the stroke, and that plaintiff did not allege that he would not have suffered the

---

[1] The trial court file includes a motion "to dismiss and motion to make more definite and certain" with an email and affidavit indicating plaintiff agreed to amend by "interlineation" to replace Providence with Hood River Medical.

[2] The parties cite cases and sources, both to the trial court and now on appeal, demonstrating that loss of chance has been accepted as a theory of recovery in some other jurisdictions. *See, e.g., Dickhoff v. Green*, 836 NW 2d 321, 334 (Minn 2013) (discussing loss of chance doctrine as adopted in other jurisdictions).

harm regardless of their inaction. Plaintiff acknowledged that he asserted a "loss of chance" case, but contended that, if he had been properly diagnosed and treated, "he would have had an opportunity for a much better outcome." The trial court granted defendants' motion, "on the grounds that Oregon does not allow recovery for 'loss of chance[.]'"

Plaintiff appeals, arguing that loss of chance is a cognizable theory of recovery in Oregon under common law. Defendants respond that the loss of chance theory of recovery was rejected by the Oregon Supreme Court in a wrongful death case, *Joshi v. Providence Health System*, 342 Or 152, 149 P3d 1164 (2006). Plaintiff insists that that decision is limited to wrongful death claims, which exist by reason of statute rather than common law. We begin by acknowledging that the loss of chance theory has been considered only in wrongful death actions, and we must address the broader question here.[3] As we will explain, we conclude that loss of chance is not a cognizable theory of relief at common law.

The general standard for professional liability is well established. We have observed that

> "[p]rofessional negligence is the failure to meet the standard of care used in the reasonable practice of the profession in the community. The plaintiff must plead and prove (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) a causal link between the breach and the harm. When a physician-patient relationship exists, the doctor has a duty to exercise that degree of care, knowledge and skill ordinarily possessed and exercised by the average provider of that type of medical service."

*Son v. Ashland Community Healthcare Services*, 239 Or App 495, 506, 244 P3d 835 (2010), *rev den*, 350 Or 297 (2011)

---

[3] Plaintiff invites this court to conclude that loss of chance is the *injury* caused by a negligent failure to act, thereby avoiding causal difficulties. We decline to do so, without further published discussion. *See Lowe*, 344 Or at 413 (noting that the court's statement in *Joshi* regarding deprivation of a 30 percent chance of survival "goes to the causal connection necessary to prove negligence, not the type of injury necessary to state a negligence claim"); *see also Howerton v. Pfaff*, 246 Or 341, 347, 425 P2d 533 (1967) (observing that "there is a wide difference between determining whether an injury actually exists and its cause" (internal quotation marks omitted)).

(internal quotation marks omitted). The causal link "must have the quality of reasonable probability[.]" *Sims v. Dixon*, 224 Or 45, 48, 355 P2d 478 (1960). Certainty of causation is not required; however, the plaintiff must prove that the "defendant's conduct was the *likely* cause" of the plaintiff's injuries. *Marcum v. Adventist Health System/West*, 345 Or 237, 248 n 10, 193 P3d 1 (2008) (emphasis in original).

In *Joshi*, the plaintiff brought an action under Oregon's wrongful death statute, ORS 30.020, alleging that her husband, the decedent, died as a result of the defendants' failure to diagnose and treat her husband's stroke. 342 Or at 155. The decedent arrived at St. Vincent Hospital complaining of a severe headache, blurry vision, and dizziness. *Id*. After completing a few tests, he was discharged with a prescription for pain medication. The decedent's symptoms persisted, and a few days later he called a physician who "attributed * * * symptoms to the pain medication, and recommended that decedent replace it with an over-the-counter medication." *Id*. The next day, the decedent returned to the hospital, at which point he was diagnosed as having had a stroke. He died despite subsequent treatment. *Id*.

On review, the court considered "whether expert testimony that defendants' conduct probably increased the chance of decedent's death creates a jury question as to causation." *Id*. at 157. The court explained that a plaintiff must properly establish causation in a negligence action and that, in most medical malpractice cases, the plaintiff must meet the "reasonable probability" or "but for" standard.[4] *Id*. at 158-60 (citing *Sims*, 224 Or at 48). That standard requires that, where a failure to act was negligent, there is a "reasonable probability" that subsequent harm would have been mitigated. *Id*. at 159. That standard is not met where a causal connection between a negligent failure to act and subsequent harm relies on mere speculation. *Id*. at 158. The court recounted that where a plaintiff's "medical expert could only testify to a *possibility*, and not a *probability*, that the defendant had caused the plaintiff's injury, the trial

---

[4] The court explained that the "substantial factor" standard is appropriate for a minority of cases but that the two standards most often lead to the same result. *Id*. at 162.

court should have directed a verdict for the defendant." *Id.* at 159 (citing *Sims*, 224 Or at 49) (emphasis in original). In other words, "[a]ny showing of causation less than a reasonable probability would be merely a possibility and, therefore, insufficient * * *." *Id.*

Given that understanding of causation, the court rejected plaintiff's argument that loss of chance is a viable theory of recovery for wrongful death under ORS 30.020. The court explained that because ORS 30.020 requires that a defendant's act or omission *cause* the decedent's death, the "[p]laintiff cannot avoid [the] requirement by showing that defendants' negligent act or omission merely increased the risk of death." *Id.* at 164. At trial, the plaintiff's medical expert "could not testify that, to a reasonable probability, defendants' failure to diagnose and treat decedent's stroke caused decedent's death" and instead was only able to estimate "that, at most, defendants' failure deprived decedent of a 30 percent chance of surviving a stroke." *Id.* The court concluded that that evidence, although suggestive of a potential injury, was insufficient to meet the causation standard required for a wrongful death action under ORS 30.020, because it did not allege that the defendants' negligent omissions caused the decedent's death.

The Supreme Court has subsequently suggested that *Joshi* "left open the question whether 'deprivation of a 30 percent chance of survival' would be sufficient proof of causation if the plaintiff suffered an injury that did not lead to death." *Lowe*, 344 Or at 413 (quoting *Joshi*, 342 Or at 164). Nevertheless, the court's rationale in *Joshi* resolves the question now presented.

The causation requirement applied in *Joshi* under the wrongful death statute reflects the same causation requirement employed at common law for medical negligence. The statute was understood to have the same meaning. *Joshi*, 342 Or at 158 ("We assume that, in using the term 'caused,' the legislature intended to incorporate the legal meaning of that term that this court has developed in its cases."). As the Supreme Court has articulated, that causation requirement dictates "that the absence of medical or surgical treatment at [the time of a negligent omission]

resulted in damage which would not have occurred if the treatment had been administered." *Horn v. National Hospital Association*, 169 Or 654, 670, 131 P2d 455 (1942). In other words, "[a] medical malpractice claim requires proof that the negligent medical care caused an injury that nonnegligent care would have avoided." *Son*, 239 Or App at 508 (citing *Simpson v. Sisters of Charity of Providence*, 284 Or 547, 561, 588 P2d 4 (1978); *Horn*, 169 Or at 679). Without causation alleged in terms of a reasonable probability, a professional negligence claim fails. *See Son*, 239 Or App at 508; *see also Joshi*, 342 Or at 163-64.

As pleaded in this case, alleging a 33 percent loss of chance results in the same causation gap as the one in *Joshi*. Here, there were no allegations that defendants' treatment caused the symptoms of stroke or affirmatively contributed to his condition. Rather, plaintiff only alleged that the treatment he received did not afford him a 33 percent chance of an improved outcome. Such allegations do not assert that it is more likely than not that plaintiff would have had a better outcome with prompt and proper treatment for stroke. The allegations rely on speculation that plaintiff would have fallen within the fortunate minority of individuals who, with proper treatment, would have "reduced or no stroke symptoms." *See Myers v. Dunscombe*, 64 Or App 722, 723, 669 P2d 388, *rev den*, 296 Or 236 (1983) (affirming a directed verdict in favor of the defendant in a dental malpractice action where "there was no evidence on which the jury could do more than speculate that * * * negligence *caused* plaintiff's injury" (emphasis in original)). As tragic as plaintiff's condition is, plaintiff's complaint does not suffice to allege that there is a reasonable probability that defendants' alleged negligent omissions resulted in his injury.

Affirmed.