Argued and submitted March 6, decision of Court of Appeals affirmed; judgment of circuit court affirmed December 21, 2006

Nisha JOSHI,
Personal Representative of the Estate of
Satyapriy Joshi,
*Petitioner on Review,*

*v.*

PROVIDENCE HEALTH SYSTEM OF OREGON CORP.,
dba St. Vincent Hospital & Medical Center,
an Oregon business;
James L. Hedtke, M.D.;
Ezra Azhar, M.D.,
Individually;
and Aloha Family Practice Clinic,
an Oregon business,
*Respondents on Review.*

(CC 9911-12261; CA A117813; SC S52590)

149 P3d 1164

Kathryn H. Clarke, Portland, argued the cause and filed the brief for petitioner on review. With her on the brief was John E. Uffelman, Beaverton.

Lindsey H. Hughes, Keating Jones Bildstein & Hughes, PC, Portland, argued the cause and filed the briefs for respondent on review James L. Hedtke, M.D. Janet M. Schroer, Hoffman Hart & Wagner LLP, Portland, argued the cause and filed the brief for respondent on review Ezra Azhar, M.D., and Aloha Family Practice Clinic. Michael T. Stone, Brisbee & Stockton, LLC, Hillsboro, argued the cause and filed the brief for respondent on review Providence Health System of Oregon Corp., dba St. Vincent Hospital & Medical Center.

Robert K. Udziela, Beaverton, filed the briefs for *amicus curiae* Oregon Trial Lawyers Association.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Riggs, Balmer, and Kistler, Justices.**

** Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Walters, J., did not participate in the consideration or decision of this case.

DURHAM, J.

## DURHAM, J.

Oregon's wrongful death statute, ORS 30.020, provides, in part:

"(1) When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, * * * may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission."

Plaintiff sued under that statute, alleging that her husband (decedent) died as a result of the failure of defendants Providence Health System of Oregon, James Hedtke, M.D., Ezra Azhar, M.D., and Aloha Family Practice Clinic to diagnose and treat decedent's stroke. On review, we must interpret the phrase "when the death of a person is caused by * * * another" in ORS 30.020, and determine what plaintiff must prove to establish liability in this wrongful death action based on alleged medical malpractice.

On or about November 27, 1996, decedent arrived by ambulance at St. Vincent Hospital, operated by defendant Providence Health System, complaining of severe headache, blurred vision, and dizziness. Defendant Hedtke, an emergency room physician at St. Vincent, ordered a CT scan and a lumbar puncture. He eventually discharged decedent with a prescription for pain medication.

On November 30, 1996, decedent continued to experience vision problems, as well as disorientation. Plaintiff contacted defendant Azhar by telephone; Azhar attributed decedent's symptoms to the pain medication, and recommended that decedent replace it with an over-the-counter medication.

The next day, an ambulance again transported decedent to the hospital. The hospital personnel determined that decedent had suffered a stroke. Treatment was unsuccessful, and decedent died two days later, on December 3, 1996.

Thereafter, plaintiff brought this wrongful death action against both physicians and the hospital and clinic where each physician practiced. The parties tried the case to

a jury. Plaintiff offered the testimony of Edward Jauch, M.D., who, among other things, testified regarding the treatment options available at the time of decedent's stroke. Those options included three medications: (1) tissue-plasminogen activator (t-PA); (2) heparin; and (3) aspirin. T-PA is a thrombolytic agent that helps to break apart blood clots. Heparin is an anti-thrombotic medication, which helps prevent further clots from developing. Aspirin also helps prevent clots by preventing blood platelets from aggregating.

In an offer of proof outside the presence of the jury, Jauch testified that, had hospital personnel diagnosed a stroke within three hours of its onset, decedent likely would have benefitted from t-PA. As to heparin, Jauch testified that he "believed that heparin would have given [decedent] the increased chance of not having that progression of his stroke." Jauch also testified that "aspirin would have been beneficial to prevent recurrence and prevention of stroke."

On cross-examination, however, Jauch testified that he could not state, to a reasonable degree of medical probability, that administration of t-PA, heparin, or aspirin would have changed the outcome and saved decedent's life. Specifically, Jauch testified that timely administration of t-PA would have afforded, at most, a 30 percent chance of improvement in outcome. As to heparin, Jauch could not testify to a specific percentage of the chance of improvement had heparin been administered. As to the efficacy of aspirin, Jauch testified that, at most, decedent would have had a 28 percent chance of improved outcome. Therefore, according to plaintiff's expert, had defendants properly diagnosed and treated decedent with one of the three treatments, decedent's chance of survival would have improved by, at most, 30 percent. The trial court directed a verdict for defendants because Jauch could not testify that decedent probably would have survived if defendants had correctly diagnosed and treated him.

The Court of Appeals affirmed the trial court's directed verdict. *Joshi v. Providence Health System,* 198 Or App 535, 108 P3d 1195 (2005). The Court of Appeals determined that "cause," as used in ORS 30.020, meant "cause-in-fact." *Id.* at 538. "Cause-in-fact," according to the Court of

Appeals, requires "evidence of a reasonable probability that, *but for* the defendant's negligence, the plaintiff would not have been harmed." *Id.* at 538-39 (emphasis added) (citing *Horn v. National Hospital Association*, 169 Or 654, 679, 131 P2d 455 (1942)). Plaintiff argued that Oregon courts had abandoned the "but-for" standard of causation, and instead applied a "substantial factor" test to determine causation. *Id.* at 539. The Court of Appeals rejected plaintiffs' argument and explained that the two tests were the same, except in two types of cases. *Id.* at 539-40. According to the Court of Appeals, those two types of cases are: (1) where the acts of multiple tortfeasors cause one injury; and (2) where two causes concur to bring about a harmful result, and either cause alone probably would have brought about the harm. *Id.* at 540. The Court of Appeals concluded that neither situation applied to this case. *Id.* at 540-41. Finally, the Court of Appeals agreed with the trial court that plaintiff had not presented evidence sufficient to permit a jury to conclude that defendants' negligence caused decedent's death. *Id.* at 545.

Plaintiff sought review, which we allowed to address two related causation questions: (1) whether the "but for" standard or the "substantial factor" standard applies to this wrongful death action; and (2) whether expert testimony that defendants' conduct probably increased the chance of decedent's death creates a jury question as to causation.

■ In answering those questions, we start with the text and context of the wrongful death statute. As previously noted, we must interpret the phrase "when the death of a person is caused by the wrongful act or omission of another." ORS 30.020. Essentially, we must interpret the requirement under ORS 30.020 that defendants' act or omission *caused* decedent's *death*.

"In interpreting the text of a provision, we * * * consider 'rules of construction that bear directly on the interpretation of the statutory provision in context.' One such well-established rule is that words in a statute that have a well-defined legal meaning are to be given that meaning in construing the statute."

*Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994) (internal citations omitted). This court has given legal meaning to the word "cause" in several cases. We assume that, in using the term "caused," the legislature intended to incorporate the legal meaning of that term that this court has developed in its cases. As the following discussion illustrates, this court has employed somewhat different legal standards of causation in different factual settings.

In *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 606, 642 P2d 624 (1982), this court explained:

> "Causation in Oregon law refers to causation in fact, that is to say, whether someone examining the event without regard to legal consequences would conclude that the allegedly faulty conduct or condition in fact played a role in its occurrence."

*See also Fergison v. Belmont Conv. Hospital*, 217 Or 453, 480, 343 P2d 243 (1959) (applying "cause in fact" to action brought under wrongful death statute).

What constitutes "cause in fact" in this court's jurisprudence has varied. In *Horn*, this court addressed causation in the medical malpractice context. The plaintiff there alleged that the defendant was negligent in failing to discover her gall bladder disease. *Id.* at 656. This court described the causation standard as follows:

> "Where the alleged negligence of the defendant consisted of physical non-feasance, that is, where the defendant did no physical act which affected plaintiff's condition, and the negligence, if any, was the failure to diagnose and advise, it is not sufficient for a plaintiff to show subsequent ailments and rest his case upon the specious doctrine of *post hoc ergo propter hoc*. One must go further and show that competent action would have been substituted for negligent inaction, and that there was a *reasonable probability* that the subsequent ailments would have been less if the substitution had been made."

*Id.* at 679 (emphasis added). The court further held that "where the causal connection between the negligent failure of a defendant and subsequent ailments of a plaintiff is left to mere speculation, a nonsuit is required." *Id.*

This court reiterated the "reasonable probability" standard of causation in *Sims v. Dixon*, 224 Or 45, 48, 355 P2d 478 (1960):

> "It is well established that the causal connection between defendant's acts or omissions and the plaintiff's injuries must not be left to surmise or conjecture. The proof of the material issue must have the quality of *reasonable probability*, and a mere possibility that the alleged negligence of the defendant was the proximate cause of plaintiff's injuries is not sufficient."

(Emphasis added.) Specifically, the court held that, because the plaintiff's medical expert could only testify to a *possibility*, and not a *probability*, that the defendant had caused the plaintiff's injury, the trial court should have directed a verdict for the defendant. *Id.* at 49; *see also Cleland v. Wilcox*, 273 Or 883, 887-88, 543 P2d 1032 (1975) (quoting *Sims*, 224 Or at 48).

Applying the "reasonable probability" causation standard to the word "caused," as used in the wrongful death statute, a plaintiff in a wrongful death case must demonstrate that the defendant's negligent act or omission more likely than not brought about the death of the decedent. Any showing of causation less than a reasonable probability would be merely a possibility and, therefore, insufficient under *Sims* and *Horn*.

Plaintiff contends, however, that the "reasonable probability" causation standard has been superseded by the "substantial factor" standard. As plaintiff notes, this court has applied the "substantial factor" causation standard in a number of cases. *See, e.g, Dewey v. A. F. Klaveness & Co.*, 233 Or 515, 541, 379 P2d 560 (1963) (phrasing the causation standard as whether the defendant's conduct was a "substantial factor" in physically producing the injury); *see also Babler Bros. v. Pac. Intermountain*, 244 Or 459, 463, 415 P2d 735 (1966) (noting that, in most negligence cases, "the factual inquiry whether the actor's conduct was a substantial factor in producing the harm is relatively uncomplicated"); *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970) (noting "substantial factor" standard).

In *McEwen v. Ortho Pharmaceutical*, 270 Or 375, 407-21, 528 P2d 522 (1974), this court applied the "substantial factor" standard to evaluate the liability of two pharmaceutical companies who manufactured oral contraceptives used by the plaintiff. The plaintiff alleged that each defendant failed to adequately warn the medical profession concerning the potential danger that the drugs could cause damage to the user's vision. *Id.* at 381. The plaintiff also alleged that her combined use of the oral contraceptives resulted in her injuries. *Id.* This court held that "[t]he respective liability of multiple defendants depends on whether the negligence of each was a *substantial factor* in producing the complained of harm." *Id.* at 418 (emphasis added). This court also explained that the plaintiff need not show that each defendant's negligence was

> "sufficient to bring about plaintiff's harm by itself; it is enough that [each defendant] substantially contributed to the injuries eventually suffered by [the plaintiff.]"

*Id.*

In *Simpson v. Sisters of Charity of Providence*, 284 Or 547, 588 P2d 4 (1978), this court applied the "substantial factor" causation standard in a medical malpractice case. The plaintiff alleged that the defendant hospital failed to take adequate x-rays when the plaintiff injured his neck and shoulders. *Id.* at 549-50. The x-ray had failed to detect a cervical fracture and the plaintiff became paralyzed from the shoulders down as a result of that fracture when he was positioned a certain way at the hospital. *Id.* at 551. The defendant argued that the plaintiff could not demonstrate causation. *Id.* at 555. In other words, the defendant claimed that the plaintiff could not show that the failure to take adequate x-rays caused the plaintiff's injury. *Id.* at 556. This court stated, "[t]he issue raised is really whether the negligent conduct of the defendant, as alleged by the plaintiff, was a *substantial factor* in producing plaintiff's injury." *Id.* at 555 (emphasis added). On appeal, the defendant contended that the trial court should have instructed the jury on "but-for" causation. *Id.* at 560-61. In response, the court explained that, in its view, the substantial factor test and the but-for test produced the same result in most cases. *Id.* at 561. The

court further elaborated that the substantial factor standard required the jury to find that the injury would not have occurred without the alleged negligence. *Id.*

A leading treatise explains the difference between the "but-for" rule of causation and the "substantial factor" rule of causation. *See* W. Page Keeton, *Prosser and Keeton on The Law of Torts* 265-68, § 41 (5th ed 1984) (Prosser & Keeton).[1] As to the "but-for" rule, Prosser & Keeton states:

> "[The 'but-for' rule] may be stated as follows: The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it."

*Id.* at 266. Prosser & Keeton note, however, that there is one situation where the "but-for" test fails: where "two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result[.]" *Id.* In that situation, "defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about." *Id.* at 267. Prosser & Keeton go on to explain:

> "[The substantial factor formula] is an improvement over the 'but for' rule for this special class of cases. It aids in the disposition of these cases and likewise of two other types of situations which have proved troublesome. One is that where a similar, but not identical result would have followed without the defendant's act; the other where one defendant has made a clearly proved but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire. But in the great majority of cases, it produces the same legal conclusion as the but-for test. Except in the classes of cases indicated, no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it; nor will cases very often arise where it would not be such a factor when it was so indispensable a cause that without it the result would not have followed."

---

[1] This court has repeatedly looked to Prosser and Keeton for explication of tort law. *See, e.g., Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 339, 83 P3d 322 (2004); *Simpson*, 284 Or at 561.

*Id.* at 267-68 (footnotes omitted).

■     Contrary to plaintiff's argument, our cases and Prosser & Keeton's treatise indicate that the "substantial factor" standard has not supplanted the "but-for" or "reasonable probability" standard of causation. Instead, the two standards apply to different types of negligence cases. The "but-for" test for causation, in which a plaintiff must demonstrate that the defendant's negligence more likely than not caused the plaintiff's harm, applies to the majority of cases. Additionally, as this court noted in *Simpson*, the two standards produce the same result in most cases. Moreover, the situations in which the standards may produce a different result are unlike the present case. For example, unlike the plaintiff in *McEwen*, plaintiff here has not demonstrated that two tortfeasors acted concurrently to bring about decedent's death. Neither has plaintiff demonstrated that decedent's death would not have occurred without defendants' alleged negligence. Further, plaintiff has not shown facts suggesting that this case is like either of the two other types of cases described by Prosser & Keeton. We therefore agree with the Court of Appeals' conclusion that plaintiff here has not shown that the "substantial factor" standard should be applied in this case.

■     Plaintiff also asks this court to adopt the lost chance of survival theory, which would allow her to demonstrate causation by offering evidence that defendants' negligence deprived decedent of a chance of surviving the stroke he suffered. One court has described the lost chance theory as follows:

> "In the typical loss of a chance case, a plaintiff already has a condition or is subject to risk from a hazard, unlike a healthy plaintiff in most personal injury cases. A plaintiff claims the negligence has increased the risk of harm by hastening or aggravating the effect of the pre-existing condition or risk. Additionally, the typical case often involves a situation in which the duty breached by a tortfeasor is imposed to prevent the harm which ultimately becomes the basis for the damages sought. Often times these cases are problematic as the tort may prevent a determination of whether the exercise of due care under the circumstances could have produced a better result."

*McKellips v. Saint Francis Hosp.*, 741 P2d 467, 471-72 (Okla 1987).

The lost chance theory applied by certain jurisdictions incorporates a "substantial factor" standard of causation:

> "Once the plaintiff shows that the defendant's negligence increased the risk that the plaintiff's injury would occur, sec. 323(a) [of the *Restatement (Second) of Torts*] allows the trier of fact to determine whether the negligence was a *substantial factor* in causing the injury."

*Ehlinger v. Sipes*, 155 Wis 2d 1, 11-12, 454 NW2d 754 (1990) (emphasis added).[2] Other courts reduce the causation standard to that of a "substantial possibility," as announced in *Hicks v. United States*, 368 F2d 626, 632 (4th Cir 1966):

> "When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any *substantial possibility* of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a certainty that the patient would have lived had she been hospitalized and operated on promptly."

(Emphasis added.)

We cannot accept plaintiff's invitation to adopt that theory in actions brought under ORS 30.020. That statute requires that a plaintiff prove that a defendant's negligent act or omission *caused* the decedent's *death*. Whether the

---

[2] The *Restatement (Second) of Torts* section 323, referred to above, provides:

"Negligent Performance of Undertaking to Render Services. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the others reliance upon the undertaking."

*Restatement (Second) of Torts* § 323 (1965).

plaintiff does so by showing a reasonable probability that a defendant's act led to decedent's death or by showing that defendant's act was a substantial factor in decedent's death, the plaintiff must demonstrate that defendant's negligent acts or omission was sufficient to bring about decedent's death. Plaintiff cannot avoid this requirement by showing that defendants' negligent act or omission merely increased the risk of death. Moreover, our prior cases make clear that plaintiff cannot discharge her obligation by showing only a "substantial possibility" that defendants' actions caused decedent's death. *See Sims*, 224 Or at 48-49 (holding that, where proof amounts to a possibility, the plaintiff has not satisfied her burden); *Cleland*, 273 Or at 887-88 (same). Additionally, this court has also held, in the wrongful death context, that "if the evidence discloses with equal cogency two or more possible causes for only one of which the defendant is responsible, the plaintiff has failed to discharge the burden of proof." *Copenhaver, Admtr'x v. Tripp*, 187 Or 662, 682, 213 P2d 450 (1950).

■ We have so far concluded that "caused," as used in ORS 30.020, encompasses both the reasonable probability standard of causation as well as the substantial factor standard; the standard to be applied in a given case depends on the circumstances of that case. We have also concluded that the circumstances of this case require plaintiff to demonstrate, to a reasonable degree of probability, that defendants' alleged negligent acts or omissions caused decedent's death. To prove causation, plaintiff offered the testimony of her medical expert, Jauch. Jauch, however, could not testify that, to a reasonable probability, defendants' failure to diagnose and treat decedent's stroke caused decedent's death. Instead, Jauch testified that, at most, defendants' failure deprived decedent of a 30 percent chance of surviving a stroke. Although deprivation of a 30 percent chance of survival may constitute an injury, the injury that is compensable under ORS 30.020 is death. Therefore, plaintiff has failed to prove the elements of the wrongful death action as set forth in the statute. The trial court therefore correctly directed a verdict for defendants.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.