Argued and submitted March 5; decision of Court of Appeals reversed, judgment of circuit court affirmed June 17, 2021

Dennis L. WRIGHT,
Personal Representative of the
Estate of Martha L. Wright, Deceased,
*Petitioner on Review,*

*v.*

John A. TURNER,
Freida Turner, and Sherri L. Oliver,
*Defendants,*

*and*

MUTUAL OF ENUMCLAW
INSURANCE COMPANY,
*Respondent on Review.*

(CC 060403958) (CA A164003) (SC S067882)

489 P3d 102

Plaintiff was injured in two automobile collisions, each involving underinsured drivers, and brought a claim against her insurance company to recover underinsurance benefits. Plaintiff's policy with defendant included policy limits of $500,000 "resulting from any one automobile accident." The jury was instructed to determine whether one or two "accidents" had occurred and the amount of damages caused by each accident. The jury found that two accidents had occurred and that it could not "separate the cause" of plaintiff's injuries. Defendant appealed, arguing that the trial court erred in instructing the jury that, if it found that it could not "separate the cause" of plaintiff's injuries, then it could find that plaintiff's damages were "indivisible." *Held*: (1) The fact that defendant had not challenged the liability of the two underinsured drivers did not preclude defendant from asking the jury to make a finding concerning the apportionment of damages between the two accidents; and (2) The trial court did not err when it instructed the jury that it could find, as a matter of fact, the number of accident that had occurred and whether the cause of plaintiff's injuries could be separated between them.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

On review from the Court of Appeals.*

Lisa T. Hunt, Law Office of Lisa T. Hunt, Lake Oswego, argued the cause and filed the briefs for petitioner on review.

_____

* On appeal from Multnomah County Circuit Court, Karin J. Immergut, Judge. 303 Or App 759, 466 P3d 682 (2020).

Also on the briefs was Rick J. Glantz, Glantz Law Group, LLC, Salem.

Thomas M. Christ, Sussman Shank LLP, Portland, argued the cause and filed the brief for respondent on review.

Kathryn H. Clarke, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Walters, Chief Justice, and Balmer, Nakamoto, Duncan, Nelson, and Garrett, Justices.**

WALTERS, C. J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____

** Flynn, J., did not participate in the consideration or decision of this case.

**WALTERS, C.J.,**

This is the second appeal in a dispute between an insured and her insurance company over the limits of her Underinsured Motorist (UIM) coverage. Plaintiff's policy includes a limit of $500,000 for damages "resulting from any one automobile accident." In the first trial in this case, the jury found that plaintiff's injuries resulted in damages of $979,540. In the second trial, the jury found that plaintiff was injured, not in one, but in two, separate "accidents," and that it could not "separate the cause" of plaintiff's injuries between those two accidents. Consequently, the trial court awarded plaintiff the full measure of her damages, minus offsets. On appeal, defendant argued that the trial court had erred in its instructions to the jury and should have required the jury to apportion plaintiff's damages between the two accidents. The Court of Appeals agreed with defendant and reversed. *Wright v. Turner*, 303 Or App 759, 466 P3d 682 (2020) (*Wright III*). For the reasons that follow, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

## I.   FACTUAL BACKGROUND

Plaintiff was a passenger in a truck driven by Lorenz. Plaintiff and Lorenz were travelling north on Interstate 5 when it began to hail and rain. During the storm, and while the truck was descending a steep hill, a sedan ahead of the truck, driven by Turner, spun out of control and collided with the front of the truck. The truck eventually came to a stop on the median strip of the highway, resting against a concrete barrier. The barrier blocked the truck's door, so Lorenz climbed out of the window. Lorenz told plaintiff to remain inside the truck and went to check on Turner. Lorenz observed that Turner and his passenger both appeared to need medical attention, so she walked back to the truck and asked plaintiff to call 9-1-1. In an effort to make the call, plaintiff unbuckled her seatbelt and reached toward the driver's side floorboard for Lorenz's purse, which contained her cellphone. As soon as plaintiff did so, a third vehicle, driven by Oliver, struck the back of the truck. The impact pushed the truck into the sedan. Plaintiff was

severely injured and received medical care, including multiple spinal surgeries and therapy.

Plaintiff filed a personal injury claim for damages. She alleged that both Turner and Oliver had been negligent and that the negligence of each had caused her injuries and damages. She also alleged that Turner and Oliver were underinsured and that, as a result, she was entitled to UIM benefits from her own insurance company, defendant Mutual of Enumclaw Insurance. Eventually, plaintiff settled with Turner and Oliver for a total of $175,000, and the case was dismissed as to them.

Plaintiff proceeded with her UIM claim. Defendant conceded that Turner and Oliver had been negligent, and the only issue put before the jury was the issue of the amount of damages plaintiff had incurred. After the jury returned its verdict, plaintiff submitted a proposed judgment awarding her the full amount of the damages that the jury determined she had incurred—$979,540—less the $175,000 plaintiff had recovered from Turner and Oliver. Defendant objected, arguing that plaintiff's policy limits were $500,000 for injuries "resulting from any one automobile accident," and the court had not yet decided whether one or two accidents had occurred and, therefore, whether one or two policy limits applied. Defendant also argued that, if there were two accidents, the jury would need to decide what damages were attributable to each accident. The trial court entered a judgment awarding plaintiff the full amount of her damages, less the $175,000, and defendant appealed.

The Court of Appeals determined that, as a matter of law, the facts indicated that only one accident had occurred, and reversed. *Wright v. Turner*, 253 Or App 18, 289 P3d 309 (2012) (*Wright I*). The court reasoned that, "'[i]f cause and result are so simultaneous or so closely linked in time and space as to be considered by the average person as one event, courts adopting the cause analysis uniformly find a single occurrence occurred.'" *Id.* at 34 (quoting *United Servs. Auto. Ass'n v. Baggett*, 209 Cal App 3d 1387, 1394, 258 Cal Rptr 52 (Cal App 1989) (alterations in *Wright I*). Applying that test, the Court of Appeals concluded that the record in *Wright I* was insufficient to support a determination of

multiple "accidents" for purposes of plaintiff's UIM policy and that the trial court had therefore erred in failing to apply the single accident policy limit of $500,000. *Id.* at 38.

This court reversed. *Wright v. Turner*, 354 Or 815, 322 P3d 476 (2014) (*Wright II*). We began by explaining that, because the UIM policy language at issue was required by statute, and the statute used the term "accident," the issue of whether there was more than one "accident" was properly framed as one of legislative intent. *Id.* at 820-21; *see also Fox v. Country Mutual Ins. Co.*, 327 Or 500, 506, 964 P2d 997 (1998) (explaining that, where a policy provision is required by statute, "we attempt to determine the legislature's intention in enacting [the] statute rather than the parties' contractual intention in entering into the insurance contract"). After examining the text, context, and legislative history of ORS 806.070, we concluded that:

> "[T]he legislature intended that a factfinder consider the particular facts of each case and determine whether a person's injuries were incurred in one uninterrupted event, happening, or occurrence or whether an initial event, happening, or occurrence was interrupted in some way—such as by time or different causal act—permitting a factfinder to conclude that there was more than one distinct event, happening, or occurrence and therefore more than one 'accident.'"

*Wright II*, 354 Or at 831. Because plaintiff had presented sufficient evidence to give rise to a jury question on the issue of whether there was one accident or two, we "remand[ed] [the] case to the trial court for that factual determination." *Id.* at 833-34.

On remand, the parties disagreed about the scope of the issues that were properly in front of the trial court. The trial court concluded that the liability of Turner and Oliver and the amount of damages that plaintiff had suffered had been determined in the first trial and that nothing in this court's decision in *Wright II* had disturbed those findings. The court explained, however, that, pursuant to this court's opinion in *Wright II*, the question whether there was one accident or two was a question for the jury. If the jury were to conclude that two accidents occurred, the court ruled that

the jury should also decide how to apportion plaintiff's damages between them.

The parties also disagreed about how exactly the jury should be told to conduct that "apportionment." Plaintiff argued that the jury should be asked whether it was possible to apportion the damages, and, only if the jury determined that apportionment was possible, should it be required to find the amount of damages caused by each accident. Plaintiff explained that her witnesses would testify that each accident was a substantial factor in causing all of her damages, and if the jury agreed, then she should be awarded her damages in full. Defendant argued that the jury should not be permitted to decide that it was impossible to apportion the damages between accidents; instead, the jury should be required to make a finding as to the amount of damages caused by each accident. The court agreed with plaintiff and the case proceeded to trial.

On the question of the apportionment of plaintiff's injuries, the court instructed the jury that:

> "If you find that the events of April 16, 2004 constitute two accidents, you will be asked to determine whether plaintiff's injuries can be apportioned between the two accidents. You will first be asked if the injuries suffered by the plaintiff in the two accidents are indivisible. In other words, can you, the jury, divide the injuries plaintiff suffered in the two accidents. If you find that you cannot separate the cause of plaintiff's injuries in any way so you can assign a percentage of injury to each accident, then the injuries are indivisible."

The court next instructed that:

> "If you find that the events of April 16, 2004 constitute two accidents and that plaintiff's injuries can be apportioned, you must then determine what percentage of Plaintiff's injuries was caused by the first accident involving Plaintiff's vehicle and the Turner vehicle and the subsequent accident involving the Oliver vehicle. If answering this question, you will need to determine what percentage of Plaintiff's injuries was caused by each accident. Your percentages must add up to 100 percent."

The court also provided the following instructions on causation:

### "CAUSATION—'SUBSTANTIAL FACTOR'

"Many factors may operate either independently or together to cause injury. In such a case, each may be a cause of injury even though the others by themselves would have been sufficient to cause the same injury.

"If you find that the defendant's act or omission was a substantial factor in causing injury to the plaintiff, you may find that the defendant's conduct caused injury even though it was not the only cause. A substantial factor is an important factor and not one that is insignificant.

### "MULTIPLE CAUSATION

"Many factors may operate either independently or together to cause injury. In such a case, each may be a cause of the injury even though the others by themselves would have been sufficient to cause the same injury. If you find that Mr. Turner or Ms. Oliver's act or omission was a substantial factor in causing the injury to the plaintiff, you may find that Mr. Turner or Ms. Oliver's conduct caused the injury even though it was not the only cause."

Finally, the court instructed on the burden of proof, telling the jury that plaintiff had the burden to prove that her injuries were indivisible and that, if the jury found that they were not, then defendant had the burden to prove "what percentage is assigned to each collision."

Filling out the special verdict form that the court provided, the jury found that two accidents had occurred and that plaintiff's injuries could not be apportioned between them. Accordingly, the trial court entered a judgment for plaintiff awarding her the total damages that she sought, less amounts that she already had recovered—$804,540.

Defendant appealed. Defendant argued that the trial court had erred when it instructed the jury that, if it found that it could not "separate the cause of plaintiff's injuries," then the injuries were "indivisible" and apportionment between the two accidents was not required. Defendant argued that, to give effect to plaintiff's policy limits, apportionment between the two accidents was necessary and could affect the amount that plaintiff was entitled to recover. For example, defendant explained, if $250,000 in damages were attributable to one accident and $730,000 in damages

were attributable to the other, then plaintiff would be able to recover $250,000 for the first accident but, because the damages for the second accident would exceed the $500,000 limit, she would be able to recover only $500,000 for the second, for a total recovery of $750,000. In that scenario, plaintiff would recover less than the $804,540 that plaintiff would be entitled to recover if the damages were not apportioned. Defendant also argued that the trial court had erred in instructing the jury that defendant had the burden to prove the apportionment of damages between the accidents.

The Court of Appeals agreed with defendant and reversed. *Wright III*, 303 Or App at 760. The court began by addressing the parties' arguments concerning the burden of proof. *Id.* at 764-65. The court explained that the general rule in Oregon is that "the initial burden of proving coverage is on the insured seeking coverage and that the insurer has the burden of proving whether any policy exclusions apply." *Id.* at 765. Thus, for purposes of determining whether a party has the burden of proof on the issue of how many accidents occurred and, in turn, how the damages should be apportioned between two accidents, the question was whether a limit of liability provision that caps the amount of damages an insured may recover was more akin to a grant of coverage or a policy exclusion. *Id.* In answering that question, the court explained that every motorist's insurance policy is required by statute to provide a minimum level of UIM coverage,[1] so it would interpret the "limit of liability" provision in plaintiff's policy in accordance with the legislature's intent. *Id.* at 765-66.

Specifically, the court noted that ORS 742.502(1) requires motor vehicle insurance policies, such as the policy

_____

[1] ORS 742.502(1) provides that "[e]very motor vehicle policy that insures against a loss that a natural person suffers and that results from liability imposed by law for bodily injury or death arising out of owning, maintaining, or using a motor vehicle," must provide uninsured motorist coverage. Additionally, ORS 742.502(2)(a) provides that a "motor vehicle bodily injury policy must have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits," and that the same limits apply to underinsurance coverage.

ORS 806.070, in turn, provides that an insurance policy must provide for payment of at least "$25,000 because of bodily injury to or death of one person in any one accident."

at issue in this case, to provide uninsured motorist (UM) coverage. *Id.* at 766-67. That coverage "'must have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits.'" *Id.* at 766 n 3 (quoting ORS 742.502(2)(a)). As to the limits on that coverage, ORS 742.504(7)(a) provides that "'the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.'" *Id.* at 766 n 4 (quoting ORS 742.504(7)(a)). Analyzing those provisions together, the court concluded that the "limit of liability" provision in the policy was more akin to a grant of coverage than an exclusion. *Id.* at 767. The court explained that the general purpose of the UIM provisions is "to provide coverage for recovery of damages sustained as a result of 'any one accident'"; therefore, "any statutory minimum or maximum placed on the amount of recovery does not fundamentally change that those statutes are properly viewed as a grant of coverage for purposes of allocating the burden." *Id.* at 768. Thus, the court concluded, the insured bears the burden of proving that a loss came within the scope the limits of liability set out in the policy. *Id.*

As to the issue of whether the trial court erred in instructing the jury that it could find that the damages could not be apportioned, the Court of Appeals concluded that, because the burden was on plaintiff to prove apportionment, that necessarily meant that the trial court had erred in instructing the jury that it was not required to apportion the damages per accident. *Id.* Thus, the court reversed and remanded for the purpose of having a jury determine "how much in damages should be apportioned between the two accidents with plaintiff bearing the burden of apportioning the damages per accident." *Id.* at 769.

Plaintiff requested, and we allowed, review.

## II.   THE PARTIES' ARGUMENTS

Here, not only do the parties dispute how to analyze the underlying legal questions, they also dispute whether those issues are properly before this court. Plaintiff and

*amicus curiae*, Oregon Trial Lawyers Association (OTLA), argue that, because defendant conceded, in the first trial, that Turner and Oliver were liable for plaintiff's damages and did not ask the jury to apportion fault, the second trial was not the time to conduct such apportionment.[2] Specifically, plaintiff and OTLA contend that, if defendant wished to have the jury apportion responsibility between tortfeasors, it would have had to ask the jury to conduct a comparative fault analysis. Further, they submit, even if causation, rather than comparative fault, were the correct means of apportionment, that too had already been determined. Because both Turner and Oliver had been held liable for plaintiff's injuries, it had necessarily been established that the conduct of each was a cause of those injuries. Plaintiff and OTLA point out that defendant has not challenged the liability of either driver at any point in these proceedings.[3]

Defendant does not take issue with plaintiff's analysis of the underlying liability of Turner and Oliver; instead, defendant argues that the issue here is not one of tort liability, but of contract terms. Defendant contends that, after the liability of the drivers was determined, contractual questions remained: It was still necessary to determine whether there was one accident or two and, if there were two accidents, the amount of damages caused by each. Defendant insists that, in answering those questions, the jury should have been instructed that plaintiff was required to prove the amount of damages per accident and that, without a finding

---

[2] Plaintiff also argues that the apportionment issues were not properly before the trial court because, in *Wright II*, this court's remand was for the limited purpose of determining whether there was one accident or two. We have considered plaintiff's argument on the scope of our remand and reject it. We do so without further discussion because the procedural posture in which this case reaches us is unique, and we do not believe our analysis would benefit bench or bar.

[3] Plaintiff's argument concerning the proper burden of proof also tracks plaintiff's argument that issues pertaining to the underlying liability of Turner and Oliver are no longer before this court. Plaintiff asserts that, "because no issue of comparative fault or the cause of Ms. Wright's injuries w[as] raised for this Court's consideration," those theories could not be pursued on remand and the Court of Appeals could not place the burden on plaintiff to prove those issues. Because we reject plaintiff's argument that the issue of apportionment was not properly before this court, we decline to consider plaintiff's argument that, for that reason, the Court of Appeals was incorrect in placing the burden on plaintiff to prove apportionment.

on that factual question, plaintiff was entitled to recover no more than the policy limit for one accident—$500,000.

For the reasons that follow, we disagree with both parties. Plaintiff is incorrect in her argument that the underlying tort liability of the negligent drivers is determinative here; the question is how plaintiff's UIM policy limits apply. And defendant is incorrect in its argument that, to apply those limits, the jury was required to apportion plaintiff's damages between the two accidents. The trial court did not err in the instructions it gave on the issue at hand— whether plaintiff's injuries "result[ed] from any one automobile accident."

## III.  ANALYSIS

### A.  *The underlying liability of the drivers does not determine the limits of plaintiff's UIM benefits.*

We begin with plaintiff's argument that, because the liability of Turner and Oliver was conceded by defendant in the first trial, no issue, except the number of accidents, remained for the second. Plaintiff contends that defendant's concession that both Turner and Oliver were negligent and that their negligence caused plaintiff's injuries is determinative. She asserts that because defendant did not ask the jury in either trial to determine the comparative fault of those tortfeasors and, in fact, objected to a jury instruction on comparative fault, there is no legal basis for apportioning damages between them. Plaintiff also argues that, even if damages could be apportioned based on causation, defendant's concession that the negligence of both Turner and Oliver were causes of her injuries eliminates the need for further inquiry. As background for those arguments, we begin with a brief discussion of relevant tort principles.

We begin with the common-law concept of causation. "Causation in Oregon law refers to causation in fact, that is to say, whether someone examining the event without regard to legal consequences would conclude that the allegedly faulty conduct or condition in fact played a role in its occurrence." *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 606, 642 P2d 624 (1982). In cases in which a plaintiff

shows that "two tortfeasors acted concurrently to bring about" the plaintiff's injury, this court permits a jury to hold each tortfeasor liable for those injuries, provided that the negligence of each was a "substantial factor" in causing the injuries. *Joshi v. Providence Health System*, 342 Or 152, 162, 149 P3d 1164 (2006). In *McEwen v. Ortho Pharmaceutical*, 270 Or 375, 418, 528 P2d 522 (1974), for example, plaintiff alleged that two pharmaceutical companies had negligently failed to warn about the potential dangers of a medication. We explained that the "respective liability of multiple defendants depends on whether the negligence of each was a substantial factor in producing the complained of harm." *Id.* The plaintiff was not required to show that each defendant's negligence was sufficient, on its own, to produce the harm; instead, the test was whether each defendant's negligence substantially contributed to the harm. *Id.*

We turn next to the concept of comparative fault, which is a creature of statute. Under Oregon's comparative fault statutes, "[w]hen a trier of fact determines that multiple defendants were negligent and that the conduct of each was a cause-in-fact of the plaintiff's harm, the trier of fact is then required to determine the relative fault of the defendants and to apportion the plaintiff's damages between them on that basis." *Lasley v. Combined Transport, Inc.*, 351 Or 1, 13, 261 P3d 1215 (2011) (citing ORS 31.605). Under those statutes, "the liability of each defendant for damages awarded to plaintiff shall be several only and shall not be joint," and the damages recoverable from each defendant is based on the percentage of fault as found by the trier of fact. ORS 31.610(1)-(2). Comparative *fault* is different than comparative *causation*.[4] With comparative fault, the "trier of fact is required to compare the degree to which each defendant deviated from the standard of care and is therefore 'blameworthy'" and to express that departure as a percentage, which is then applied to apportion damages. *Lasley*, 351 Or at 13. Oregon's comparative fault statutes do not "call for apportioning damages by quantifying the contribution

---

[4] In *Sandford*, this court noted that, in negligence cases involving two defendants, some courts had stated that "the allocation of damages is to reflect relative causation." 292 Or at 600. In *Sandford*, we rejected the "comparative causation" approach under Oregon's comparative fault statutes. *Id.* at 600-03.

of several causes that had to coincide to produce the injury." *Sandford*, 292 Or at 606.

Those principles applied in plaintiff's underlying action against Turner and Oliver. The liability of each was conceded and is no longer in dispute. *See Wright II*, 354 Or at 833 (noting that the question of whether Turner and Oliver could be held liable for plaintiff's injuries is not at issue; "they have been" held liable). That does not mean, however, that there was no need for a second trial to determine the limits of the UIM benefits to which plaintiff was entitled. The parties agree that, under *Wright II*, a jury trial was required to determine whether there was one accident or two. They part ways, however, as to whether and to what extent the tortfeasors' liability affected the question of whether the jury was permitted or required to apportion plaintiff's damages at that trial, and they also disagree as to the instructions that should have been given. To provide context for those arguments, we turn to a discussion of the statutes that governed UM and UIM coverage in Oregon at the time the policy at issue in this case was in effect.[5]

UM coverage was defined by *former* ORS 742.500(1) (2003) as:

> "coverage within the terms and conditions specified in ORS 742.504 insuring the insured, the heirs or legal representative of the insured for all sums which the insured or they shall be legally entitled to recover as damage for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070."

Next, *former* ORS 742.502(1) (2003) required every motor vehicle insurance policy "insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death arising out of ownership, maintenance, or use of a motor vehicle" to provide uninsured

---

[5] ORS 742.502 and ORS 742.504 were amended in 2015. *See* Or Laws 2015, ch 5, (SB 411). Plaintiff's policy in this case was effective from December 12, 2003 to June 12, 2004, so the changes to those statutes do not govern the policy at issue here. We refer to the statutes which governed the policy at the time that the policy was in effect.

motorist coverage. Additionally, *former* ORS 742.502(2)(a) (2003) stated that "[u]ninsured motorist coverage larger than the amounts required by ORS 806.070 shall include under-insurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage." Thus, *former* ORS 742.502 (2003) required that every motor vehicle pol-icy include uninsured and underinsured motorist coverage. And, under *former* ORS 742.502(2)(a) (2003), UIM coverage was triggered when the insured suffered damages caused by an accident with an underinsured motorist, and an under-insured motorist "is a motorist who is insured for an amount that is less than the policy limits of the insured's uninsured motorist coverage." *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 218, 179 P3d 633 (2008) (construing third sentence of *for-mer* ORS 742.502(2)(a) (2003)); *see also former* ORS 742.502 (2)(a) (2003) ("Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsur-ance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured *for an amount that is less than the insured's uninsured motorist coverage.*" (Emphasis added.)).[6]

In this case, it is uncontested that plaintiff's UIM coverage was triggered. In her tort claim against Turner and Oliver, plaintiff alleged that those two defendants had engaged in negligent conduct that resulted in her bodily injury. When defendant decided not to challenge Turner and Oliver's liability, defendant was, essentially, conceding that plaintiff had suffered damages that were "caused by acci-dent and arising out of" the use of a motor vehicle. *Former* ORS 742.500(1) (2003). Defendant also has never contested that Turner and Oliver were underinsured—their policy limits were less than plaintiff's own policy limits.[7] Thus, in

---

[6] Since ORS 742.502 and ORS 742.504 were amended in 2015, determining whether coverage is triggered may now require a different analysis.

[7] The trial court ruled below that there was "no dispute" that Turner and Oliver were liable and that both were underinsured because they each had liability insurance limits that were less than plaintiff's UM insurance limits. Defendant, correctly, has not challenged that ruling and has never disputed that Turner and Oliver's own liability limits were lower than plaintiff's UM limits.

the first trial, there was no dispute that plaintiff's UIM coverage was triggered.

In addition, the benefits that plaintiff's UIM policy provides are uncontested. *Former* ORS 742.504 (2003) set out the required provisions of uninsured and underinsured motorist (UM and UIM) coverage. Specifically, *former* ORS 742.504 (2003) stated that every such policy shall provide coverage "which in each instance is no less favorable in any respect to the insured *** than if the following provisions were set forth in the policy." *Former* ORS 742.504(1) (2003) required such policies to cover "all sums which the insured *** shall be legally entitled to recover *** from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured vehicle."[8] *See also Vogelin v. American Family Mutual Ins. Co.*, 346 Or 490, 492, 213 P3d 1216 (2009) ("ORS 742.504 establishes the minimum policy terms for coverage.").

But determining that coverage has been triggered and the benefits it provides are different determinations than the determination of whether an insured's policy places limits on the recovery of those benefits and what those limits are. *Bergmann v. Hutton*, 337 Or 596, 604, 101 P3d 353 (2004) ("The terms of a *policy* include limits on the insurer's liability; the terms of the *coverage* do not." (Emphasis in original.)). The UM and UIM statutes anticipate that UM and UIM coverage and benefits will be subject to policy limits. For example, *former* ORS 742.500(1) (2003) defined "[u]ninsured motorist coverage" as coverage defined by *former* ORS 742.504 (2003) "in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070." *See also Mid-Century Ins. Co.*, 344 Or at 208 ("ORS 742.500(1) presumes that an insurer will provide uninsured motorist coverage only up to stated limits, and sets minimum limits on that coverage."). ORS 806.070, in turn, provides for minimum limits of coverage

---

[8] Plaintiff notes that ORS 742.504(2)(j)(A) now includes a definition of "[s]ums that the insured *** is legally entitled to recover," which is "the amount of damages that *** [a] claimant could have recovered in a civil action from the [at-fault driver] at the time of the injury after determination of fault or comparative fault and resolution of any applicable defenses." *Former* ORS 742.504 (2003) did not include that definition.

for insurance policies in accordance with Oregon's Financial Responsibility Law.[9] *Former* ORS 742.502(2)(a) (2003) also governed policy limits and provided that a "motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits." Finally, we note that the policy limit at issue here is written in terms that mirror the wording of *former* ORS 742.504(7)(a) (2003):

> "[t]he limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person *as the result of any one accident* and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons *as the result of any one accident*."

(Emphases added.)[10]

That background explains why this court decided, in *Wright II*, that a second trial was required to determine the limits of defendant insurer's liability for plaintiff's damages. In the first trial, the jury determined the total sum that plaintiff was entitled to recover from the tortfeasors—$979,540. Plaintiff had UIM insurance that covered that sum—"all sums which the insured *** shall be legally entitled to recover *** from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of [an underinsured or] uninsured vehicle."[11] *See former* ORS 742.504(1)(a) (2003).

---

[9] That is true for both *former* ORS 806.070 (2003) and the current statute.

[10] In *Wright II*, this court cited to the "each accident" limit and its use of the phrase "as the result of any one accident" without focusing on the application of that limit when bodily injury is sustained by "two or more persons." *Wright II*, 354 Or at 821. The statute also permits an "each person" policy limit for damages because of bodily injury sustained by one person "as the result of any one accident," and that may have been the more appropriate citation. The parties' arguments do not address whether there could be a difference in the meaning of the phrase "as the result of any one accident" depending on the number of persons sustaining bodily injury, and we also do not address that issue.

[11] Plaintiff notes that ORS 742.504(2)(j)(A) now includes a definition of "[s]ums that the insured *** is legally entitled to recover," which is "the amount

But that was true only up to the limits of the policy. The second trial was necessary to determine those limits, and plaintiff is mistaken in her position that defendant's concession as to Turner's and Oliver's liability made that determination unnecessary. Plaintiff recognizes that Turner's and Oliver's liability did not determine the number of accidents and that the number of accidents was a question for the jury in the second trial. As we explained in *Wright II*, the concept of tortfeasors' legal liability is distinct from the question of whether one or two accidents occurred. 354 Or at 832-33. But in deciding the limits on the UIM benefits that plaintiff was entitled to recover, the number of accidents was not the only question that remained. Plaintiff's recovery was limited to $500,000 for damages "resulting from any one automobile accident," and the fact that both Turner and Oliver were liable for plaintiff's damages did not decide whether her damages "resulted from" one or two accidents. The liability of Turner and Oliver established that they acted negligently and that their negligent conduct caused plaintiff's injuries, but it did not necessarily establish that all of plaintiff's damages resulted from more than one of the accidents that occurred. The question of whether Turner and Oliver engaged in negligent conduct that caused injury to plaintiff is certainly related to the question of whether plaintiff's damages were caused by more than one accident, but the two questions are not precisely equivalent and the answers are not necessarily the same. It was factually possible that the accident involving Turner caused different injuries than did the accident involving Oliver. Plaintiff does not convince us that defendant was not entitled to a jury determination on that issue, and we therefore decline to affirm the judgment on that basis.

B.   *The jury was correctly instructed on the questions necessary to determine the UIM policy limits.*

We turn, then, to defendant's argument that the trial court erred in instructing the jury when it permitted

_____

of damages that *** [a] claimant could have recovered in a civil action from the [at-fault driver] at the time of the injury after determination of fault or comparative fault and resolution of any applicable defenses." *Former* ORS 742.504 (2003), however, does not include that definition.

the jury to decide that the cause of plaintiff's injuries could not be separated. Defendant contends that the trial court erred in failing to inform the jury that it *must* apportion damages between the two accidents. In determining whether it was an error to give a particular instruction, we do not view that instruction in isolation. Instead, "we read the instructions as a whole to determine whether they state the law accurately." *State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006).

As noted, plaintiff's policy limits her recovery to $500,000 for damages "resulting from any one automobile accident," and that wording mirrored, and was governed by, *former* ORS 742.504(7)(a) (2003). Although the parties do not center their arguments on the plain meaning of that text, it is there that we must begin. When we consider what the phrase "resulting from any one automobile accident" means, "we attempt to determine the legislature's intention in enacting that statute rather than the parties' contractual intention in entering into the insurance contract." *Fox*, 327 Or at 506; *see also Vega v. Farmers Ins. Co.*, 323 Or 291, 299-300, 918 P2d 95 (1996) (explaining that, where a statutory provision controls a UM policy provision, this court resolves the question by applying its methodology for interpreting statutes).

We think it obvious that the legislature used the phrase "as the result of any one accident" to refer to damages "caused" by any one accident. "[R]esult" means "to proceed, spring, or arise as a consequence, effect, or conclusion." *Webster's Third New Int'l Dictionary* 1937 (unabridged ed 2002). A "consequence" is "something that is produced by a cause or follows from a form of necessary connection or from a set of conditions: a natural or necessary result." *Id.* at 482-83. To determine whether something is the result *of* something, then, one looks to whether something is "produced" or "caused" by it. We therefore understand the phrase "resulting from any one accident," to impose a limit on the recovery of damages that are "caused" by any one accident.

The trial court apparently had the same understanding because it instructed the jury using causation concepts. The court instructed the jury to decide whether it

could "separate the cause of plaintiff's injuries in any way so you can assign a percentage of injury to each accident."[12] The court instructed that, if the jury found that plaintiff's injuries could be apportioned, then it should "determine what percentage of [p]laintiff's injuries was caused by the first accident *** and the subsequent accident." And, the court gave the jury the following instruction about what it means to "cause" injury:

> "Many factors may operate either independently or together to cause injury. In such a case, each may be a cause of the injury even though the others by themselves would have been sufficient to cause the same injury. If you find that Mr. Turner or Ms. Oliver's act or omission was a substantial factor in causing the injury to the plaintiff, you may find that Mr. Turner or Ms. Oliver's conduct caused the injury even though it was not the only cause."

Defendant's only objection to those instructions at trial and on appeal is that the jury should not have been permitted to decide that it could not separate the cause of plaintiff's injuries. Put differently, defendant argues that the jury should not have been instructed that it could find that plaintiff's injuries were caused by both accidents or tortfeasors. Defendant states two bases for that argument. First, defendant contends that, under ORS 31.610, liability in Oregon is several only. Defendant apparently asserts that, because the liability of Turner and Oliver could not be joint, plaintiff's injuries must be separable. Second, defendant seems to argue that it is legally or factually impossible for all of plaintiff's damages to be the "result of" more than one accident.

Neither argument is convincing. As to the first, we have explained that the underlying liability of the negligent drivers and the sums they each could be required to pay

---

[12] The complete instruction was as follows:

"If you find that the events of April 16, 2004 constitute two accidents, you will be asked to determine whether plaintiff's injuries can be apportioned between the two accidents. You will first be asked if the injuries suffered by the plaintiff in the two accidents are indivisible. In other words, can you, the jury, divide the injuries plaintiff suffered in the two accidents. If you find that you cannot separate the cause of plaintiff's injuries in any way so you can assign a percentage of injury to each accident, then the injuries are indivisible."

is no longer at issue. The current question is how the limit on plaintiff's UIM benefits is to be determined. The answer to that question does not depend on whether one or both tortfeasors could have been required to pay all of plaintiff's damages or only a portion of them; instead, it depends on whether plaintiff's injuries were caused by one or both accidents. If the question were whether both Turner and Oliver could have been held individually liable for all of plaintiff's damages or how those damages would have been apportioned between them, then we would apply Oregon's comparative negligence statutes. As explained, those statutes would require that plaintiff's damages be apportioned between the two tortfeasors based on relative fault and would make each tortfeasor severally liable for his or her percentage of the whole of plaintiff's damages. But plaintiff's claims against Turner and Oliver have been resolved and those tortfeasors' relative liability is not at issue here. Accordingly, the fact that, under the comparative fault statutes, the liability of Turner and Oliver would be several rather than joint is not a factor in our interpretation of the UIM limits that are now before us. We reject defendant's first argument.

Defendant's second argument seems to be that it is legally or factually impossible for all of plaintiff's damages to be the "result of" more than one accident and that, if plaintiff cannot prove which damages resulted from which accident, her claim fails for lack of necessary evidence. Again, defendant is mistaken. Oregon law recognizes that there are instances in which "'two causes concur to bring about an event.'" *Joshi*, 342 Or at 161 (quoting W. Page Keeton, *Prosser and Keeton on The Law of Torts* 266, § 41 (5th ed 1984)). In *McEwen*, for example, the plaintiff suffered retinal bleeding as a result of her ingestion of drugs manufactured by two different drug manufacturers over a period of time. This court explained that the negligence of both manufacturers could be a cause of the indivisible harm that the plaintiff suffered:

> "The respective liability of multiple defendants depends upon whether the negligence of each was a substantial factor in producing the complained of harm. If both Syntex and Ortho were negligent and their negligence combined to produce plaintiff's injuries, then the negligence of Ortho

was concurrent with that of Syntex and does not insulate Syntex from liability. This is true although the negligent omissions of each defendant occurred at different times and without concerted action. Nor is it essential to Syntex's liability that its negligence be sufficient to bring about plaintiff's harm by itself; it is enough that Syntex substantially contributed to the injuries eventually suffered by Mrs. McEwen."

*McEwen*, 270 Or at 418 (internal citations omitted).

When read as a whole, the instructions in this case made clear that the jury was to decide the cause of plaintiff's injuries under those settled principles of causation. The instructions informed the jury that "[m]any factors may operate either independently or together to cause injury," and "[i]n such a case, each may be a cause of the injury even though the others by themselves would have been sufficient to cause the same injury." The court told the jury that it "may find that Mr. Turner or Ms. Oliver's conduct caused the injury even though it was not the only cause." And the court instructed that if the jury found that it could not "separate the cause of plaintiff's injuries in any way so you can assign a percentage of injury to each accident, then the injuries are indivisible." Finally, the court instructed that, if the jury found that plaintiff's injuries could be apportioned, it should assign a percentage to each accident based on the amount of damages caused by each accident.

Thus, under settled principles of causation, the jury was permitted, but not required, to find that both accidents caused plaintiff's injuries. In this case, the jury found that it could not "separate the cause" of plaintiff's injuries and that her injuries resulted from the two accidents that the jury found had occurred. Juries will not reach the same conclusion in every case involving two accidents. Accidents can occur days apart and can cause different injuries resulting in easily distinguished damages. For instance, an accident on one day could cause injury to a plaintiff's head; an accident months later could cause injury to her foot. In that instance, a jury could separate the cause of the plaintiff's injuries, and, if it did so, a $500,000 policy limit would apply to the damages that the jury found "resulted from" each accident. But, as this case and *McEwan* illustrate, that will

not always be the case. The law permits a jury to decide, as a matter of fact, that a plaintiff's injuries were caused by the concurrence of two accidents.[13]

We conclude that the trial court did not err in instructing the jury that if it found that two accidents occurred, it must determine whether it could "separate the cause" of plaintiff's injuries, and if it found that it could not, that plaintiff's injuries were indivisible. The trial court was not required to instruct the jury that it must apportion plaintiff's damages between the two accidents that the jury concluded had occurred.

## IV.   CONCLUSION

We conclude that the trial court correctly instructed the jury that it could find, as a matter of fact, the number of accidents that had occurred and whether the cause of plaintiff's injuries could be separated between them.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[13] This case does not require that we analyze in any depth the meaning of the term "accident" and whether that term refers to the negligent act, the collision, or the injury that caused the plaintiff's damages. Here, the jury instructions on causation did not make such distinctions, defendant did not object to the jury instructions on the basis that such distinctions were necessary, and defendant's argument in this court does not depend on such distinctions. The fact that the case was tried without making such distinctions may explain plaintiff's argument equating the question of whether the negligent acts of Turner and Oliver were both a cause of plaintiff's injuries with the question of whether plaintiff's injuries were caused by both accidents. Still, we think that plaintiff's argument is legally incorrect for the reasons that we have given. In a tort action, where the actions of two tortfeasors result in damages, there will generally be no need to determine how many "accidents" occurred, and both tortfeasors may be held liable for the plaintiff's injuries without regard to the number of accidents or the injuries caused by each. When those issues arise, as they do here, the fact of the tortfeasors' liability does not necessarily determine the number of accidents or the damages caused by each.